**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WALTER NYE, ET AL,

                    Plaintiffs,

v.

INGERSOLL-RAND COMPANY,

                   Defendant.

Civ. No. 08-3481 (DRD)

**O P I N I O N**

JAMES CALVIN BROWN, ET AL,

                    Plaintiffs,

v.

INGERSOLL-RAND COMPANY,

                   Defendant.

Civ. No. 08-4260 (DRD)

THEODORE E. BOND, ET AL,

                     Plaintiffs,

v.

INGERSOLL-RAND COMPANY,

                   Defendant.

Civ. No. 08-5371 (DRD)

*Appearances by:*

THE LANIER LAW FIRM, PLLC
by: Eugene Eudorf, Evan M. Janush, and Kevin Parker
126 East 56th Street
6th Floor
New York, NY 10022

       *Attorneys for Plaintiffs, Walter Nye, <u>et. al.</u>*

HELLRING LINDEMAN GOLDSTEIN & SEIGAL, LLP
by: Bruce S. Etterman
One Gateway Center
Newark, NJ 07102

RUSTY HARDIN & ASSOCIATES, P.C.
by: Rusty Hardin and Ryan Higgins
5 Houston Center
1401 McKinney, Suite 2250
Houston, TX 77010

       *Attorneys for Plaintiffs, Calvin Brown, <u>et. al.</u>*

McCARTER & ENGLISH, LLP
by: Anthony Bartell
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

       *Attorneys for Defendant*

2

**DEBEVOISE, Senior District Judge**

Defendant Ingersoll-Rand Company ("Ingersoll-Rand") moves for reconsideration of the court's November 20, 2008 Opinion consolidating and refusing to stay or dismiss three separate cases: Nye, et. al. v. Ingersoll Rand Company, Civ. No. 08-3481, Brown, et. al. v. Ingersoll-Rand Company, Civ. No. 08-4260, and Bond, et. al. v. Ingersoll-Rand Company, Civ. No. 08-5371.  In a separate filing based on the same arguments, Ingersoll-Rand also moves to stay or dismiss the Bond action.  After reviewing its November 20, 2008 Opinion, the court finds that the alleged defects contained therein do not affect the validity of its decision to consolidate the three cases or refuse Ingersoll-Rand's request that the cases be stayed or dismissed.  Therefore, Ingersoll-Rand's Motion for Reconsideration will be denied.  The pending Motion to Stay or Dismiss the Bond action will be denied for the same reasons as the original Motion to Stay or Dismiss the Nye and Brown proceedings.

## I.  BACKGROUND

The facts underlying this case stem from an effort by Ingersoll-Rand to sell Dresser-Rand Company ("Dresser-Rand"), a subsidiary corporation.  The background of those efforts and procedural history of the ensuing litigation are laid out in detail in the court's November 20, 2008 Opinion.  In order to provide context for the current ruling, the court repeats below some of the facts summarized in that Opinion.

**A.  The 2000 Sales Incentive Plan**

Before February 2000, Dresser-Rand was a joint venture owned 49 percent by Ingersoll-Rand and 51 percent by Dresser Inc.  In August 1999, Ingersoll-Rand announced that it intended to sell its interest in Dresser-Rand to Dresser Inc.  Consistent with its rights under the joint venture agreement, however, Dresser Inc. elected not to purchase Ingersoll-Rand's interest.

Instead, Dresser Inc. sold its 51 percent interest to Ingersoll-Rand in February 2000 for approximately $543 million, at which time Dresser-Rand became a wholly-owned subsidiary of Ingersoll-Rand.

Thereafter, Ingersoll-Rand desired to divest itself of its interest in Dresser-Rand. To further that purpose and to achieve a desirable sale price for Dresser-Rand, Ingersoll-Rand adopted the Sales Incentive Plan ("2000 SIP"). The 2000 SIP was meant "to reward key employees for their contributions toward maximizing [earnings] and consequently, a desirable sale price for Dresser-Rand Company." It specifically noted that "[t]his plan is in lieu of any grant from a Stock Appreciation Right (SAR) Plan and/or Stock Option program for the years 2001, 2002 and 2003."

The 2000 SIP included sections governing its "effective date[s]" and award grants to employees who were terminated before the closing of the sale. The former provided that "[t]he plan is effective September 1, 2000 and will remain in effect until Dresser-Rand Company is sold," while the termination provision stated:

> An employee who voluntarily terminates or is involuntarily terminated by the Company for any reason before the closing date of the sale, with the sole exceptions of death, disability, or retirement shall not receive or be entitled to any award from this plan. For those employees [sic] who leave the Company for the reason of death, disability or retirement will receive a pro-rated award based on the time they were actively employed during the period from the effective date of this plan to December 31, 2002. Any payment due will be made within 90 days from December 31, 2002.

Additionally, the SIP contained a section on how the value of an SVU should be determined, which provided in part that "[a]ny award under this plan will be paid no later than 90 days following the closing date of the sale of Dresser-Rand Company."

4

When Dresser-Rand was not sold by December 31, 2002, Ingersoll-Rand abandoned its efforts for a time and then, in 2004, initiated a new attempt to sell.  In connection with its renewed sale efforts, Ingersoll-Rand devised a new sale reward plan (the "2004 Plan").  On October 31, 2004, Ingersoll-Rand sold Dresser-Rand.

**B.  The <u>Antoun</u> and <u>Barnett</u> Actions**

The <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> actions arise out of facts substantially similar to those in two previous cases that were consolidated and heard by this court: <u>Ingersoll-Rand Company v. Barnett, et.al.</u>, and <u>Antoun, et. al. v. Ingersoll-Rand</u>, Consol. Civ. No. 05-1636 (DRD).  The court's opinions from those cases dated October 26, 2006, January 8, 2007, and September 26, 2007 provide background into the lengthy and contentious nature of that litigation.  <u>See</u> 2006 U.S. Dist. LEXIS 78836; 2007 U.S. Dist. LEXIS 1622; 2007 U.S. Dist. LEXIS 71923.  For the sake of comprehensiveness, the court repeated in its November 20, 2008 Opinion much of the factual and procedural history of the <u>Barnett</u> and <u>Antoun</u> actions.  In its Motion for Reconsideration, Ingersoll-Rand disputes November 20, 2008 Opinion's characterization of various holdings contained in the <u>Barnett</u> and <u>Antoun</u> opinions.  In order to provide background for the current proceeding and address those concerns, the history of the <u>Barnett</u> and <u>Antoun</u> litigation, along with an explanation of the court's holdings in opinions relating to that case, is detailed below.

On February 10, 2005, Ingersoll-Rand filed a suit in the Superior Court of New Jersey seeking a declaratory judgment that it bore no obligation to various former employees under the 2000 SIP because the plan had expired prior to the sale of Dresser-Rand.  <u>See</u> <u>Ingersoll-Rand Company v. Barnett</u>, et al., Docket No. L-1075-05.  The defendants in that proceeding

5

subsequently removed to this court.  On June 1, 2005, several former Dresser-Rand employees,

including five defendants in the <u>Barnett</u> action, filed a separate suit in this court.  <u>See</u> <u>Antoun, et.</u>

<u>al. v. Ingersoll-Rand Company</u>, Civ. No. 05-2834 (DRD).  The plaintiffs in <u>Antoun</u> sought

payment under the 2000 SIP for the 2004 sale of Dresser-Rand.  As with the defendants in

<u>Barnett</u>, Ingersoll-Rand contended that the <u>Antoun</u> plaintiffs were not entitled to payments under

the 2000 SIP because the plan expired prior to the sale of Dresser-Rand.  Additionally, Ingersoll-

Rand claimed that each of the <u>Antoun</u> plaintiffs had waived his right to payments under the 2000

SIP by executing a severance agreement containing broad release language when he left Dresser-

Rand.  With the consent of the parties, the court consolidated the <u>Antoun</u> and <u>Barnett</u> actions on

August 19, 2005.

        After the <u>Antoun</u> and <u>Barnett</u> actions were consolidated, Ingersoll-Rand moved for partial

summary judgment against the <u>Antoun</u> plaintiffs.  Ingersoll-Rand contended, in the first instance,

that there was no plan in effect when the <u>Antoun</u> Plaintiffs retired because the 2000 SIP expired

on December 31, 2002.  In the alternative, Ingersoll-Rand claimed that – even if the plan did not

expire – the severance agreements signed by the <u>Antoun</u> plaintiffs released Ingersoll-Rand from

any obligation to pay under the 2000 SIP.  Although those agreements varied slightly, each

explicitly released Ingersoll-Rand, Dresser-Rand, its parents, affiliates and subsidiaries from

"any and all charges, complaints, claims, and liabilities of any kind suspected or unsuspected ...

which [the employee] at any time heretofore had or claimed to have or which [the employee]

may have or claim to have regarding events that have occurred as of the date of this Agreement."

        The <u>Antoun</u> plaintiffs argued in opposition to Ingersoll-Rand's request for partial

summary judgment that the 2000 SIP did not expire because its plain language mandated that it

would remain effective until the sale of Dresser-Rand.  Additionally, the <u>Antoun</u> plaintiffs

moved for partial summary judgment declaring that the releases in the severance agreements did not bar their claims and striking defenses asserted by Ingersoll-Rand on the basis of those releases.  In support of that motion, the Antoun plaintiffs contended that the releases contained in their severance agreements did not apply to claims based on the 2000 SIP because the severance agreements were entered into before the 2004 sale of Dresser-Rand, and therefore the claims based on that sale had not accrued at the time the releases became effective.

Deciding the parties' motions for summary judgment, the court issued at two-part holding on October 26, 2006.  In the first ruling, the court found that, because the unambiguous language of the 2000 SIP provided that "[t]he Plan is effective September 1, 2000, and will remain in effect until Dresser-Rand is sold," the plan did not expire and was in effect when Dresser-Rand was sold in August 2004.  2006 U.S. Dist. LEXIS 78836, at *47.  Ingersoll-Rand now claims that "[t]he parties never moved in 2006 for partial summary judgment on whether the SIP expired on or before December 31, 2002, and the Court strongly denies that it issued any such ruling." (Def.'s Br. Supp. Mot. Recons. 5.)  After reviewing the October 26, 2006 Opinion, the court finds itself thoroughly confused as to Ingersoll-Rand's basis for making such a claim.  That Opinion clearly stated that "the Court is persuaded by the evidence that the SIP was in full force and effect at the time the Antoun plaintiffs signed their severance agreements [after December 31, 2002]," thus holding that the 2000 SIP did not expire.  2006 U.S. Dist. LEXIS 78836, at *47. The court's confusion is compounded by the fact that Ingersoll-Rand later moved for reconsideration of that decision – characterizing the ruling as "crucial" and relating to "the central issue in this case" – on the basis that it was issued sua sponte.  The Motion for Reconsideration was denied, in an Opinion dated January 8, 2007, on the gounds that Ingersoll-Rand's request "mischaracterize[d] the action of the Court, disingenuously misstate[d] its own

7

facts, reargue[d] matters already decided by the Court but with which it disagree[d], and submit[ted] new evidence to support its position." 2007 U.S. Dist. LEXIS 1622, at *6.  It appears that the current Motion for Reconsideration arises out of comparable behavior; an appearance that is bolstered by the fact that, as discussed below, the court reiterated its holding that the 2000 SIP did not expire on December 31, 2002 in its Opinion dated September 26, 2007. 2007 U.S. Dist. LEXIS 71923, at *23, *32.  Thus, the court rejected Ingersoll-Rand's argument that the plan expired on not one, but three, occasions.

In the second portion of its October 26, 2006 holding, the court found that there was no evidence to support a finding that either the Antoun plaintiffs or the company representatives who negotiated the severance agreements intended the releases to cover payment of the SVUs under the 2000 SIP.  In support of the latter ruling, the court noted that the sale of Dresser-Rand had not yet occurred at the time the releases were executed, and thus the Antoun plaintiffs' claim for payment of SVUs had not accrued.  Therefore, the court denied Ingersoll-Rand's motion for partial summary judgment, granted the Antoun plaintiffs' request for a declaration that the releases contained in their severance agreements did not bar their claims for payment under the 2000 SIP, and struck the defenses asserted by Ingersoll-Rand on the basis of those releases. 2006 U.S. Dist. LEXIS 78836, at *54-55.

After the court's ruling that the 2000 SIP did not expire and the severance agreements did not bar claims for payments under the plan, the Antoun plaintiffs moved for summary judgment on their contention that Ingersoll-Rand breached the 2000 SIP by withholding payments after the 2004 sale of Dresser-Rand.  Despite the fact that extensive discovery had already been

completed,[1] Ingersoll-Rand initially argued that the motion should be denied pursuant to Federal Rule of Civil Procedure 56(f) because it could not present facts essential to its opposition without taking further depositions.  In response to that assertion, the court deferred consideration of the Antoun plaintiffs' motion for summary judgment and permitted Ingersoll-Rand to proceed with depositions.  Over the next ten months, depositions were taken and the parties were allowed to submit voluminous additional papers and supplemental briefs.  2007 U.S. Dist. LEXIS 71923, at *12.

On September 26, 2007, the court ruled that none of the extrinsic evidence submitted by Ingersoll-Rand was sufficient to alter the clear and unambiguous language in the 2000 SIP stating that it would remain in effect until the sale of Dresser-Rand.  2007 U.S. Dist. LEXIS 71923, at *32.  In fact, the court found that the evidence submitted by Ingersoll-Rand in support of its contention that the plan expired on December 31, 2002 actually served to reinforce the 2000 SIP's provisions stating that it would be effective until Dresser-Rand was sold.  Id. Therefore, the court granted the Antoun plaintiffs' motion for summary judgment and held that Ingersoll-Rand was liable to those plaintiffs for payments due under the 2000 SIP.  Id.

---

[1] In its Motion for Reconsideration, Ingersoll-Rand disputes that "extensive discovery" had taken place in the Antoun and Barnett actions prior to the court's September 26, 2007 ruling.  (Def.'s Br. Supp. Mot. Recons. 5.)  The progress, or alleged lack thereof, in discovery proceedings in the previous action bore in no way on the court's decision to deny Ingersoll-Rand's Motion to Stay or Dismiss the cases the Nye, Brown, and Bond cases, and therefore the statement in dispute cannot form a proper basis for reconsideration.  However, Ingersoll-Rand's claim that the court erred in stating that "extensive discovery" had taken place prior to the conclusion of the Antoun and Barnett actions is vexatious when viewed in light of the efforts made to accommodate the company's requests in that case, which included appointing Special Master Herman D. Michels to oversee the process and delaying the proceedings for ten months so that depositions could be taken.  Therefore, the court refers Ingersoll-Rand to its statements regarding the "extensive discovery" process in Antoun and Barnett as articulated in its September 26, 2007 Opinion.  See 2007 U.S. Dist. LEXIS 71923, at *12.

After the court held that Ingersoll-Rand was liable for payments due under the 2000 SIP, the parties entered into a contentious dispute over the appropriate amount of damages to be awarded. Both parties filed motions for summary judgment requesting that the court adopt their respective calculations, along with a deluge of letters and other communications relating to the prospective damages award. Thankfully for all involved, the parties eventually reached a confidential settlement agreement disposing of all claims. Pursuant to that agreement, the court vacated and withdrew its October 26, 2006 Opinion holding that the 2000 SIP did not expire and the Antoun plaintiffs' claims were not barred by the releases in their severance agreements, its January 8, 2007 Opinion denying reconsideration of that ruling, and its September 26, 2006 Opinion holding that Ingersoll-Rand was liable for payments due under the 2000 SIP.

## C. The Nye, Brown, and Bond Actions

The three actions currently before the court assert claims for breach of the same agreement as was at issue in Antoun and Barnett, the 2000 SIP. The first of those cases, Nye, et. al. v. Ingersoll-Rand Company, civ. no. 08-3481, which was filed with this court on July 14, 2008, involves claims for payments allegedly due under the 2000 SIP by 63 individuals who worked for Dresser-Rand until its sale. Similarly, the claim in Brown, et. al. v. Ingersoll-Rand Company, civ. no. 08-4260, involves 50 plaintiffs who worked for Dresser-Rand until it was sold. That case was filed with this court on August 22, 2008. In the final case, Bond, et. al. v. Ingersoll-Rand Company, civ. no. 08-05371, 17 individuals who (like the plaintiffs in Antoun) worked for Dresser-Rand at the time the 2000 SIP was promulgated but left the company prior to the sale assert claims for payment pursuant to that agreement. That case was filed on October 31, 2008.

10

Using identical language in their Complaints, the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> plaintiffs assert breach of contract and promissory estoppel claims alleging that the 2000 SIP remained in force at the time of the sale and Ingersoll-Rand wrongfully withheld payments due under that agreement.  (<u>Nye</u> Compl. ¶¶ 86-96); (<u>Brown</u> Compl. ¶¶ 73-83); (<u>Bond</u> Compl. ¶¶ 41-51.)  As was the case in <u>Antoun</u> and <u>Barnett</u>, Ingersoll-Rand opposes the plaintiffs' claims by arguing that the 2000 SIP expired prior to the sale of Dresser-Rand.  (Def.'s Br. Supp. Mot. Dismiss <u>Nye</u> and <u>Brown</u> 2); (Def.'s Br. Supp. Mot. Dismiss <u>Bond</u> 2.)  In the alternative, Ingersoll-Rand contends that the <u>Nye</u> and <u>Brown</u> plaintiffs waived their right to payments under the 2000 SIP by agreeing to compensation under a new plan announced on August 26, 2004 ("2004 Plan").[2]  (Def.'s Br. Supp. Mot. Dismiss <u>Nye</u> and <u>Brown</u> 5.)  With respect to the latter argument, the <u>Nye</u> and <u>Brown</u> plaintiffs claim that they were fraudulently induced to waive their claims based on the 2000 SIP and accept benefits under the 2004 Plan, stating that:

> [Ingersoll-Rand's] agreement to sell Dresser-Rand was announced publicly on August 26, 2004.  In its announcement, [Ingersoll-Rand] stated that the sale of Dresser-Rand completed "the last of a series of major divestitures in recent years as part of a strategy to transform the Company...

> On that same date, [Ingersoll-Rand] distributed a letter dated August 26, 2004 from Herbert L. Henkel, the Chairman, President and Chief Executive Officer of [Ingersoll-Rand], advising certain employees of Dresser-Rand that the [2000 SIP] had expired at some unidentified time before the sale.  Mr. Henkel's August 26, 2004 letter was, upon information and belief, the first notice to any current or former Dresser-Rand employees that, according to [Ingersoll-Rand], the [2000 SIP] had "expired."  No explanation was provided as to how Henkel had the authority to unilaterally terminate the [2000 SIP].

---

[2] The <u>Bond</u> plaintiffs were no longer employed by Dresser-Rand at the time of the sale, and thus were not eligible to participate in the 2004 Plan.

11

> Henkel also announced that [Ingersoll-Rand] was commencing a new reward plan (<u>after</u> already having negotiated the applicable sale) which provided far less compensation to Plaintiffs than would have been allocated under the [2000 SIP].  Plaintiffs were advised that the original SVUs had "absolutely no value" and if they did not accent the new Plan they "risked losing everything."  A number of Plaintiffs had direct interaction with Henkel as well as other members of upper management wherein those threats and fraudulently inducing statements were repeated and elaborated upon.  As a result, each of the Plaintiffs received a fraction of the payment to which they were entitled under the [2000 SIP].

(<u>Nye</u> Compl. ¶¶ 83-85); (<u>Brown</u> Compl. ¶¶ 70-72) (emphasis in original.)

In addition to the breach of contract and promissory estoppel causes of action, the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> complaints make identical allegations in asserting a claim for attorneys' fees pursuant to Texas law.  Those averments state that:

> At the time [Ingersoll-Rand] established the [2000 SIP] for the benefit of certain employees of Dresser-Rand, Plaintiffs were employed by Dresser-Rand in Texas.
>
> The amounts owed to Plaintiffs, pursuant to the [2000 SIP], constitute wages for services they each rendered.
>
> Section 38.001 of the Texas Civil Practice and Remedies Code, Tex. Civ. Prac. & Rem. Code § 38.001(2), requires an award of reasonable attorneys' fees, in addition to compensatory damages and costs, associated with a successful claim for wages.
>
> Section 38.001 of the Texas Civil Practice and Remedies Code, Tex. Civ. Prac. & Rem. Code § 38.001(2), requires an award of reasonable attorneys' fees, in addition to compensatory damages and costs, associated with a successful claim for breach of contract.[3]

(<u>Nye</u> Compl. ¶¶ 97-101); (<u>Brown</u> Compl. ¶¶ 84-87); (<u>Bond</u> Compl. ¶¶ 52-55.)

---

[3] The statute provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... labor performed."  Tex. Civ. Prac. & Rem. Code § 38.001(2).  Questions remain as to whether the payments sought by Plaintiffs pursuant to the 2000 SIP meet the definition of "labor performed." However, those issues need not be decided at this stage in the proceedings.

**D.  The New York Action**

Before the Nye, Brown, and Bond plaintiffs sought relief in this court, Ingersoll-Rand instituted a proceeding in the Supreme Court of New York for Erie County seeking declaratory judgment that it is not liable for payments under the 2000 SIP because that agreement expired prior to the 2004 sale of Dresser-Rand.  See  Ingersoll-Rand v. Norton, et. al., Index No. 2008004682.  That case, which was filed on April 23, 2008, originally named as defendants 20 individuals – 17 of whom comprise the group of plaintiffs in the Bond proceeding[4] – who had been employed by Dresser-Rand at the time the 2000 SIP became effective, but left that company prior to the 2004 sale.  Additionally, the Complaint named as defendants "John Does" who "worked for Dresser-Rand but remain[ed] unknown to Ingersoll-Rand" and "may assert claims under the expired [2000] SIP."  (Brown Pl.'s Br. Opp'n Mot. Dismiss, Ex. D, ¶ 23.)  The Complaint went on to state that "[i]f and when Ingersoll-Rand secures information identifying the John Doe defendants, Ingersoll-Rand will amend its Complaint to include that information." (Id.)

On July 24, 2008, ten days after the Nye action was filed in this court, Ingersoll-Rand amended its Complaint in the New York proceeding to name the Nye plaintiffs as defendants in

---

[4] As discussed below, three of the Defendants in the New York action did not join the Bond proceeding.  Counsel for the Bond plaintiffs informed the court by a letter dated November 4, 2008 that those individuals claim no interest in either the federal or state litigation.  However, there have been no discussions of a settlement between Ingersoll-Rand and those individuals, and they have not officially stated their lack of interest.  (Def.'s Br. Supp. Mot. Recons. 4.) Therefore, the court will proceed under the assumption that those individuals may actively oppose Ingersoll-Rand's claims in the New York case, and will not factor their statements regarding a lack of interest in that proceeding into its decision as to whether the Bond action should be stayed or dismissed.

that case.  On August 28, 2008, Ingersoll-Rand amended its New York Complaint a second time to name the Brown plaintiffs, who had filed in this court five days earlier.

No discovery has been completed, and no hearings or other proceedings have been held in the New York action.  (Bond Pl.'s Br. Opp'n Mot. Recons. 3.)  In fact, there is a pending Motion to Dismiss the state proceeding based on the allegation that 75 of the 130 Nye, Brown, and Bond plaintiffs – a total of 58 percent – reside outside New York and are not subject to the state court's personal jurisdiction.  (Id.)  The Supreme Court of New York for Erie County originally scheduled arguments on that Motion for December 18, 2008 in order to allow time for this court to decide Ingersoll-Rand's first Motion to Stay or Dismiss the federal actions before coming to a decision regarding whether to assert state jurisdiction.  (Id.)  However, Ingersoll-Rand requested that the state proceeding be transferred to New York's Commercial Division. The Supreme Court of New York granted that request on December 16, 2008.  See (Def.'s Letter of Jan. 6, 2009.)  Thus, the pending Motion to Dismiss the state proceedings for lack of jurisdiction has not been argued, and the New York court has not yet decided whether it may exercise jurisdiction over the Nye, Brown, and Bond plaintiffs.[5]

**E.  November 20, 2008 Opinion**

On September 17, 2008, the Brown plaintiffs filed a Motion to Consolidate their claims with those in Nye.  Rather than dispute the Brown plaintiffs' claim that the two cases should be consolidated because they arise out of the same factual circumstances and pose the same

---

[5] Ingersoll-Rand disputes this point, which was also articulated in the court's November 20, 2008 Opinion.  As will be discussed below, the fact that 55 of the Nye, Brown, and Bond plaintiffs reside in New York does not lead inexorably to the conclusion that the New York court will choose to exercise its jurisdiction over those individuals during the pendency of federal proceedings in this court.

questions of law, Ingersoll-Rand opposed the Motion on the grounds that both actions should be
dismissed or stayed in favor of the New York action.

Ingersoll-Rand first articulated its argument in favor of a stay or dismissal by filing
identical Motions for that relief in both the Nye and Brown proceedings on October 3, 2008,
three days before their brief in opposition to the Brown plaintiffs' Motion to Consolidate was
due.  At oral argument, counsel for Ingersoll-Rand stated that the Bond action, which was filed
after Ingersoll-Rand's Motion in the other proceedings, should be stayed or dismissed for the
same reasons as the other two actions.  Namely, Ingersoll-Rand argued that "exceptional
circumstances" require this court to dismiss or grant a stay in favor of the New York proceeding
because (1) that action was filed prior to the cases before this court, (2) refusal to stay or dismiss
would waste judicial resources by requiring piecemeal litigation, (3) the claims at issue involve
state law causes of action that are best adjudicated by a state court, (4) only the New York
proceeding can fully decide the rights of all possible claimants, and (5) the New York state court
is the more convenient forum.  (Def.'s Br. Supp. Mot. Dismiss 8-14.)

On November 20, 2008, the court first consolidated the Nye, Brown, and Bond actions
and rejected the Ingersoll-Rand's Motion to Stay or Dismiss.  In support of its holding that the
cases should be consolidated, the court noted that:

> The plaintiffs in each case make identical claims for breach of
> contract, promissory estoppel, and attorneys fees.  Those claims
> are based on the 2000 SIP, and will require the court to interpret
> that document.   Furthermore, Ingersoll-Rand asserts the same
> defense – that the 2000 SIP expired on Dec. 31, 2002 and the
> plaintiffs' were therefore not entitled to payment for the 2004 sale
> pursuant to that agreement – in each of the three actions.  In fact,
> the only issue that is not common to all three cases is Ingersoll-
> Rand's contention that the Nye and Brown plaintiffs waived their
> right to assert claims under the 2000 SIP by accepting payments
> under the 2004 Plan.   That issue does not, however, alter the

underlying question of whether the 2000 SIP expired; it will simply require the court to add another layer of analysis in order to adjudicate the <u>Nye</u> and <u>Brown</u> plaintiffs' claims, and does not justify separately deciding the common questions posed by the three cases.

<u>Id.</u> at * 18-19.

Furthermore, the court found it significant that "[t]he company filed identical briefs and affidavits in support of that motion in both the <u>Nye</u> and <u>Brown</u> cases, and stated at oral argument that the contentions contained in those documents applied with equal force to the <u>Bond</u> plaintiffs." <u>Id.</u> at *19. Based on those factors, the court consolidated the three actions "for all purposes." <u>Id.</u>

In denying Ingersoll-Rand's Motion to Stay or Dismiss, the court engaged in a lengthy analysis of the abstention doctrine – first articulated in <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976) – that Ingersoll-Rand claimed entitled it to relief. That doctrine allows a federal court to stay or dismiss proceedings in favor of a concurrent state action "only when there is evidence of a strong federal policy that all claims [of the type at issue] should be tried in the state courts." <u>Ryan v. Johnson</u>, 115 F.3d 193, 197-98 (3d Cir. 1997). After determining that such a policy exists, a federal court may stay or dismiss an action over which it properly has jurisdiction if the balance of six factors weighs against the exercise of that jurisdiction. <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 16 (1983); <u>see also</u> <u>Colorado River</u>, 424 U.S. at 818 ("No one factor is necessarily determinative…"). The factors to be considered are (1) which court first assumed jurisdiction over the property, if any, at issue, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, (4) the order in which personal jurisdiction was obtained, (5) whether federal or state law governs the dispute, and (6) whether the state court will adequately protect the interests of

16

the parties.  See Moses H. Cone, 460 U.S. at 16 (1983); Spring City Corp. v. Amer. Bldgs. Co.,

193 F.3d 165, 171 (3d Cir. 1999).

The court found no evidence of any federal policy favoring adjudication of the types of

claims of the type at issue in Nye, Brown, and Bond by state courts.  2008 U.S. Dist. LEXIS

95450, at *28.  In order to make it clear what type of "strong federal policy" would be necessary

to justify abstention, the court drew a comparison between the circumstances of this case and

those of Colorado River:

> An examination of Colorado River itself serves to elucidate the
> type of "strong federal policy" against duplicative litigation that is
> necessary to justify abstention in favor of a concurrent state
> proceeding.  That case dealt with the allocation of water rights in
> Colorado.  The Supreme Court found that abstention in favor of a
> Colorado state action was appropriate because the McCarran
> Amendment, 43 U.S.C. § 453, evinced a strong policy in favor of
> the "avoidance of piecemeal adjudication of water rights in a river
> system."   That policy, stated the Court, was "akin to that
> underlying the rule that jurisdiction be yielded to the court first
> acquiring control of property, for the concern in such instances is
> with avoiding the generation of additional litigation through
> permitting inconsistent dispositions of property."   Rather than
> seeking a determination of the rightful ownership of a physical
> object like the water at issue in Colorado River, the dispute in Nye,
> Brown, and Bond is a simple suit for breach of contract.  Given the
> absence of a strongly articulated policy against piecemeal litigation
> of that issue, Ingersoll-Rand's argument that this court should
> abstain is unavailing and must be rejected.

Id. (quoting Colorado River, 424 U.S. at 819).

In a secondary holding, the court ruled that even if a strong federal policy favoring

adjudication of the plaintiffs' breach of contract and promissory estoppel claims by the state

court did exist, abstention would not be justified because none of the factors enumerated by

Colorado River and its progeny weigh against the exercise of federal jurisdiction in this case.  Id.

at *23-32.  In doing so, the court engaged in a lengthy application of each consideration to the

17

facts of this case.  In order to provide background for the current Motion for Reconsideration and state the court's reasoning in denying Ingersoll-Rand's original Motion to Stay or Dismiss with all possible clarity, the November 20, 2008 Opinion's analysis of each factor is summarized below.

### i. Convenience of the Federal Forum

After finding that the first factor – which court first assumed jurisdiction over the property at issue – was irrelevant because the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> cases are not <u>in rem</u> proceedings and there is no property over which to assume jurisdiction, the court turned to Ingersoll-Rand's argument that New York is the most convenient forum for litigating this case because more plaintiffs reside in New York than in any other state.  The court stated:

> That contention ignores two critical factors.  First, the majority of the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> plaintiffs reside outside New York, with some living in such far-flung locations as Singapore, Norway, France, and the United Kingdom.  In fact, only 55 of the 130 plaintiffs in <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> reside in New York.  While Ingersoll-Rand argues strenuously that it would cause inconvenience and hardship for those plaintiffs residing in New York to make the relatively short trip to New Jersey, it has presented no evidence as to why New York presents a more convenient forum for the almost 60 percent of claimants that live outside that state.  More importantly, Ingersoll-Rand's argument ignores the maxim that "a plaintiff's choice of forum is normally due considerable deference."  The amount of deference given may be reduced based on foreign citizenship, but the fact that a plaintiff resides outside the chosen forum does not strip that plaintiff's choice of all weight.

<u>Id.</u> (quoting <u>Lony v. E.I. DuPont de Nemours & Co.</u>, 935 F.2d 604, 609 (3d Cir. 1991)).

In addition to the deference owed to the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> Plaintiffs' choice of forum, the November 20, 2008 Opinion found that several factors favor adjudication of this dispute in federal court.  Among those was the fact that Ingersoll-Rand is based in New Jersey,

thus making it less burdensome for the company to produce the records and witnesses necessary to complete discovery.  More importantly, the court found that it is conveniently positioned to exercise jurisdiction over all the parties because the plaintiffs reside all over the world but have submitted themselves to the jurisdiction of this forum and the company is headquartered here. Id. at *24-25.  In making that finding, the court specifically stated that it made no ruling on whether the New York court could exercise personal jurisdiction over all the plaintiffs.  Id. at *25.  It did, however, reject Ingersoll-Rand's argument that New Jersey is an inconvenient forum on the bases of the "aforementioned ease with which discovery and witness examinations could be conducted, along with the deference afforded to the plaintiffs' choice of forum."  Id.

### ii. Desirability of Avoiding Piecemeal Litigation

Ingersoll-Rand's original Motion to Stay or Dismiss relied heavily on case law expressing a concern for "the avoidance of piecemeal litigation," which the company contended is the "paramount factor in ... abstention analysis."  (Def.'s Reply Br. Supp. Mot. Dismiss 4.)  In its November 20, 2008 Opinion, the court rejected the company's interpretation of the applicable law, stating:

> While Ingersoll-Rand is correct in asserting that courts seek to avert duplicative litigation when possible, its argument that abstention is appropriate in this case fundamentally misconstrues the applicable precedent by elevating concerns for judicial economy over the court's obligation to exercise its lawful jurisdiction.  The law on this point is clear: "Colorado River abstention must be grounded on more than just the interest in avoiding duplicative litigation. … Even though it is important to prevent 'piecemeal litigation,' a stay [or dismissal] is appropriate only when there is a 'strong federal policy against such litigation.'"

2008 U.S. Dist. LEXIS 95450, at *26 (quoting Spring City, 193 F.3d at 171-72).

After clarifying the applicable precedent, the court compared the claims at issue in this case to those in Colorado River.  Id.  Finding no "strong federal policy" against piecemeal

litigation of claims for breach of contract and promissory estoppel, the court rejected Ingersoll-Rand's argument that the possibility of piecemeal litigation required it to stay or dismiss.  Id. at *26-27.

### iii. Order in Which Personal Jurisdiction was Obtained

Ingersoll-Rand contended in its Motion to Stay or Dismiss that "Third Circuit courts ... regularly defer to the first filed action," and argued on that basis that this court should abstain in favor of the New York proceeding.  (Def.'s Br. Supp. Mot. Dismiss at 9.)  The court rejected the company's interpretation of the applicable precedent, finding that it is not the order in which the actions were filed, but rather "the order in which jurisdiction was obtained by the concurrent forums" that is a consideration in the abstention analysis.  Colorado River, 424 U.S. at 819 (emphasis added); see also Moses H. Cone, 460 U.S. at 15; Ryan, 115 F.3d at 196; Spring City, 193 F.3d at 171.

Having already found that the New York court had yet to assert jurisdiction over the Nye, Brown, and Bond plaintiffs because a Motion to Dismiss the New York proceeding was pending, the court ruled that:

> Since the New York court has not yet decided whether it enjoys jurisdiction over the plaintiffs, it cannot be argued that the state proceeding first "obtained" jurisdiction for the purposes of abstention.  Thus, Ingersoll-Rand's contention that the New York action was filed before this proceeding is irrelevant and does not support an exercise of abstention.  In fact, an analysis of which court first obtained jurisdiction weighs against granting a stay or dismissal because this court has asserted its diversity jurisdiction pursuant to 28 U.S.C. § 1332, while the New York court has not yet ruled on the question of whether it has jurisdiction over the plaintiffs.

2008 U.S. Dist. LEXIS 95450, at *29-30.

### iv. Governing Law

Like the preceding considerations, the court found that the fifth factor in the six-part

Colorado River abstention analysis – whether federal or state law governs the substantive claims

at issue – did not support Ingersoll-Ran's request for a stay or dismissal.  In doing so, it noted

that:

> "Abstention cannot be justified merely because a case arises entirely under state law." Ryan, 115 F.3d at 199.  In determining whether abstention is appropriate, the court's task is "not to fund some substantial reason for the exercise of federal jurisdiction," but rather "to ascertain whether there exist 'exceptional circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction." Moses H. Cone, 460 U.S. at 25-26 (quoting Colorado River, 424 U.S. at 818).  Thus, it is only in "rare circumstances" that "the presence of state-law issues may weigh in favor of that surrender." Id.

2008 U.S. Dist. LEXIS 95450, at *30.

The court proceeded to rule that the particular state law issues posed by the Nye, Brown,

and Bond proceedings did not weigh in favor of abstention for two reasons.  First, Ingersoll-

Rand in its Motion to Dismiss or Stay those actions went "only so far as to allege that 'New

York law ... may well apply to this action,' and qualifie[d] that inconclusive contention by

stating that "[e]ven if New Jersey law applies to this dispute, the New York state court remains

well equipped to interpret such state law and to resolve the disputes arising thereunder." Id. at

*30-31 (quoting (Def.'s Br. Supp. Mot. Dismiss 12)).  Thus, the court found that it was unclear

whether the New York court would be the more desirable forum for adjudicating those claims

because New Jersey law may apply, and that state's law is frequently utilized by this district in

diversity cases and pursuant to our supplemental jurisdiction over state law claims asserted in

cases arising under federal law.  Id. at *31.

21

Additionally, the court noted the fact that "the claims at issue in this case involve simple matters of contractual interpretation (rather than any unsettled area of state jurisprudence)."  Id. It then drew a parallel between those claims and ones which the Court of Appeals for the Third Circuit ruled did not justify abstention in Ryan v. Johnson, 115 F.3d at 200, quoting the Court's statement in that case that "[a]lthough it is possible that some case could involve a skein of state law so intricate and unsettled that resolution in the state courts might be more appropriate, traditional negligence law does not fit that description" because it is an area "in which federal courts are called upon routinely to predict state law."  Since contractual interpretation is also an area in which federal courts regularly predict and interpret state law, the court held that abstention in favor of the New York action was not justified.  See 2008 U.S. Dist. LEXIS 95450, at *31-32.

### v. Adequacy of the State Forum

Finally, the court found that the last factor in the six-part Colorado River abstention analysis – whether the state court will adequately protect the interests of the parties – did not support Ingersoll-Rand's request for a stay or dismissal.  Since "the question whether parties' interests are protected is only relevant when they are not; that is, 'when the state court is adequate, this factor carries little weight.'" Spring City, 193 F.3d at 172 (quoting Ryan, 115 F.3d at 200), and "neither party contend[ed] that the New York court would be unable to effectively address the issues raised by this case," the court held that "the adequacy of that court does not weigh either for or against abstention."  2008 U.S. Dist. LEXIS 95450, at *32.

## F.  The Pending Motions

Arguing that "this Court based its November 20, 2008 Opinion … on clear errors of law and fact," (Def.'s Br. Supp. Mot. Recons. 1), Ingersoll-Rand filed a Motion for Reconsideration

22

on December 10, 2008.  In that Motion, the company argues that the court (1) erred by consolidating the three cases for "all purposes" and should limit its consolidate of the <u>Nye</u> and <u>Brown</u> actions to pretrial proceedings, (2) violated Ingersoll-Rand's due process rights by consolidating the <u>Bond</u> action with the <u>Nye</u> and <u>Brown</u> proceedings before the company was required to answer and before ruling on the company's Motion to Stay or Dismiss the <u>Bond</u> action, (3) misconstrued the Court of Appeals' Opinion in <u>Ryan v. Johnson</u>, which the company argues provides precedent for an exercise of abstention, (4) ignored the possibility that the denial of Ingersoll-Rand's original Motion to Stay or Dismiss would result in piecemeal litigation, and (5) erroneously held that this court obtained jurisdiction before the New York court.  (Def.'s Mot. Recons. 7-14.)  Based on those contentions, the company requests that the court reconsider its November 20, 2008 Opinion and grant a stay or dismissal in favor of the New York action. (<u>Id.</u> at 1-2.)

Six days after filing their Motion for Reconsideration, the company filed a Motion to Stay or Dismiss the <u>Bond</u> action which asserts essentially the same arguments as in the earlier Motion to Stay or Dismiss the <u>Nye</u>, and <u>Brown</u> proceedings.  Specifically, Ingersoll-Rand contends that this court should stay or dismiss the <u>Bond</u> proceeding in favor of the New York action because (1) "Third Circuit courts … regularly defer to the first filed action," and the New York proceeding was initiated before federal litigation in the <u>Bond</u> action, (2) refusal to stay or dismiss would waste judicial resources by requiring piecemeal litigation, (3) the claims at issue involve state law causes of action that are best adjudicated by the New York court, (4) only the New York proceeding can fully decide the rights of all possible claimants, and (5) the New York court is the more convenient forum.  Those contentions are asserted in much the same language as was used in the original Motion to Stay or Dismiss the <u>Nye</u> and <u>Brown</u> actions.  In fact, it

23

appears that Ingersoll-Rand made only minor modifications to its brief, such as changing the name of the proceeding and number of plaintiffs involved.

## II. DISCUSSION

While the two pending Motions assert similar substantive arguments – that this court should apply Colorado River abstention and stay or dismiss the Nye, Brown, and Bond proceedings in favor of the New York action – they arise under different procedural contexts. Ingersoll-Rand's Motion for Reconsideration of the court's November 20, 2008 Opinion and Order must be reviewed under the standard applicable to such requests, while its Motion to Stay or Dismiss the Bond action must be reviewed in light of the case law applicable to Colorado River abstention.

### A.  Motion for Reconsideration

"[I]t is well-established in this district that a motion for reconsideration is an extremely limited procedural vehicle."  Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992).  As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice."  North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

As discussed above, Ingersoll-Rand claims that "this Court based its November 20, 2008 Opinion … on clear errors of law and fact." (Def.'s Br. Supp. Mot. Recons. 1.)  The court's decision to consolidate the Nye, Brown, and Bond actions "for all purposes" is the first of those alleged errors.  Ingersoll-Rand's argument regarding consolidation is based largely on its assertion that, because "[t]he Nye and Brown [a]ctions deal primarily with whether the releases

24

signed by the 2004 Plan claimants released Ingersoll-Rand from any alleged liability under the

expired [2000] SIP," those cases "involved very different questions of law and fact" than the

<u>Bond</u> action.  (<u>Id.</u> at 4.)  That allegation was specifically rejected by the court's November 20,

2008, in which it stated that:

> The plaintiffs in each case make identical claims for breach of
> contract, promissory estoppel, and attorneys fees.  Those claims
> are based on the 2000 SIP, and will require the court to interpret
> that document.  Furthermore, Ingersoll-Rand asserts the same
> defense – that the 2000 SIP expired on Dec. 31, 2002 and the
> plaintiffs' were therefore not entitled to payment for the 2004 sale
> pursuant to that agreement – in each of the three actions.  In fact,
> the only issue that is not common to all three cases is Ingersoll-
> Rand's contention that the <u>Nye</u> and <u>Brown</u> plaintiffs waived their
> right to assert claims under the 2000 SIP by accepting payments
> under the 2004 Plan.  That issue does not, however, alter the
> underlying question of whether the 2000 SIP expired; it will
> simply require the court to add another layer of analysis in order to
> adjudicate the <u>Nye</u> and <u>Brown</u> plaintiffs' claims, and does not
> justify separately deciding the common questions posed by the
> three cases.

2008 U.S. Dist. LEXIS 95450, at *19-20.

Federal Rule of Civil Procedure 42(a) grants a trial court broad discretion to consolidate

cases involving "a common question of law or fact."  The rule specifically states that such cases

may be "join[ed] for hearing or trial of any or all matters at issue in the actions."  Fed. R. Civ. P.

42(a)(1).  Therefore, in light of the fact that the <u>Nye</u>, <u>Brown</u>, and <u>Bond</u> actions involve claims

premised on the same contract and Ingersoll-Rand asserts the same defense against all claims,

the company has no legal basis for arguing that the court erred in consolidating the three actions

"for all purposes" instead of for pretrial proceedings only.

Ingersoll-Rand's argument that the court erred in consolidating the actions "for all

purposes" is especially dubious when viewed in light of the nature of the various rulings that will

25

be necessary to resolve the three cases.  The dispute as to whether the 2000 SIP expired prior to

December 31, 2002 poses a quintessential question of law – it will require the court to interpret

the terms of that document.  See TracindaCorp. v. DaimlerChrysler AG, 502 F.3d 212, 229 (3d.

Cir. 2007) ("[C]ontract construction – the determination of the legal relations of the parties to the

contract – is a question of law.")  As was the case in the Antoun and Barnett actions, that

question will form an appropriate basis for judgment as a matter of law, and will not require a

jury trial to settle disputes of fact.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52

(1986).[6]  Therefore, Ingersoll-Rand's argument that the court erred by consolidating the Nye,

Brown, and Bond actions "for all purposes" is without merit.  Ingersoll-Rand may move to

bifurcate any eventual trial proceedings if it feels it will be prejudiced as a result of

consolidation, and the court will consider the merits of that motion when and if it is submitted.

Ingersoll-Rand also argues that the court violated its due process rights by consolidating

the Bond proceeding with the other two actions before the company was required to answer the

Bond plaintiffs' complaint.  Ingersoll-Rand admits that it was served with the Bond plaintiffs'

Complaint on November 11, 2008 and was required to respond to that Complaint by December

16th of that year.  (Def.'s Br. Supp. Mot. Recons. 10.)  The company contends that "the Court

… cannot consolidate the three Actions unless and until it hears and decides, on a proper record,

Ingersoll Rand's motion to stay the Bond action."  (Def.'s Br. Supp. Mot. Recons. 9.)  That

Motion deals solely with the issue of Colorado River abstention, and contains no arguments that

the Bond proceeding should not be consolidated with the Nye and Brown actions.  See generally

---

[6] Ingersoll-Rand correctly notes that the court's Opinions in the Antoun and Barnett actions
holding that the 2000 SIP did not expire prior to December 31, 2002 were vacated as a result of a
settlement between the parties.  (Def.'s Br. Supp. Mot. Recons. 5.)  Were that not the case, the
court's prior Opinions would apply to the current proceeding through collateral estoppel such
that the company would be precluded from asserting as a defense its argument that the 2000 SIP
expired.

26

(Def.'s Br. Supp. Mot. Dismiss Bond.)  Consequently, even if the court erred in consolidating the cases before Ingersoll-Rand had a chance to respond to the Bond plaintiffs' allegations, that error was harmless because Ingersoll-Rand has failed to articulate an argument against consolidation. Therefore, the court in this ruling reaffirms its decision to consolidate the Bond proceeding with the Nye and Brown actions for all purposes.

With respect to the denial of its original Motion to Stay or Dismiss in favor of the New York proceeding, Ingersoll-Rand contends that the court misconstrued the Court of Appeals' Opinion in Ryan v. Johnson, which the company argues provides precedent for an exercise of abstention.  Specifically, Ingersoll-Rand claims that "Ryan … finds abstention appropriate where, as here, the state action involves parties and claims numbering in the hundreds and where, as here, the state action involves more than simple negligence issues."  (Def.'s Br. Supp. Mot. Recons. 11.)  That claim is simply not true.  The Court of Appeals clearly stated in Ryan, 115 F.3d 193, 197-98, that abstention in favor of a state court proceeding is appropriate "only when there is evidence of a strong federal policy that all [similar] claims should be tried in the state courts."  In the absence of such a policy, the number of plaintiffs or claims is wholly irrelevant.

Additionally, Ingersoll-Rand disingenuously contends that abstention is appropriate because this case involves claims for breach of contract and promissory estoppel, as opposed to "simple negligence issues."  See (Def.'s Br. Supp. Mot. Recons. 11.)  The Court of Appeals' ruling that the presence of state law claims in Ryan did not support abstention was not based on the fact that those claims were couched in tort law relating to negligence, but rather on the Court's ruling that the claims were part of an "area … in which federal courts are routinely called upon to predict state law."  Ryan, 115 F.3d at 200.  That statement applies with equal force to the contract law claims at issue in the Nye, Brown, and Bond proceedings.  In fact, the

Court of Appeals made it obvious in Ryan that it was the mundane character of the state law issues and not their sounding in negligence that it found significant by citing Western Auto Supply Company v. Anderson, 610 F.2d 1126, 1129 (3d Cir. 1979), and stating its holding in that case as "finding none of the Colorado River factors satisfied in [a] state law action on debt." Ryan, 115 F.3d at 198.  Accordingly, the court reiterates its holding in the November 20, 2008 Opinion that the state law breach of contract and promissory estoppel issues posed by the Nye, Brown, and Bond actions do not support abstention in favor of the New York proceeding.

Ingersoll-Rand also argues that the court in its November 20, 2008 Opinion ignored the danger that its denial of Ingersoll-Rand's original Motion to Stay or Dismiss would result in piecemeal litigation.  The company points out that three defendants in the New York action did not join the Nye, Brown, or Bond suits and have not officially conceded their claims for benefits, thus giving rise to the possibility that Ingersoll-Rand may have to pursue two separate cases: its suit in New York seeking declaratory judgment that it owes those individuals no obligation under the 2000 SIP, and the consolidated Nye, Brown, and Bond actions before this court.  (Def.'s Br. Supp. Mot. Recons. 12.)  Contrary to the company's contention, however, the court did not "completely ignore these facts," (Id.), in its November 20, 2008 Opinion.  Rather, the court found that the danger of piecemeal litigation, although arguably present, did not justify abstention because there is no "strongly articulated congressional policy against piecemeal litigation in the specific context of th[is] case." Ryan, 115 F.3d at 198.  "Colorado River abstention must be grounded on more than just the interest in avoiding duplicative litigation." Spring City, 193 F.3d at 171-72.  In the absence of a "strong federal policy against [piecemeal] litigation, … the general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point

28

that judgment may create a res judicata or collateral estoppel effect on the other action." Id. at 172.  Therefore, the court reaffirms its November 20, 2008 holding that the possibility of piecemeal litigation does not justify abstention in this case.

Finally, Ingersoll-Rand claims that this court incorrectly ruled that considerations of which forum first obtained jurisdiction did not weigh in favor of abstention.  Specifically, the company contends that "[t]his Court repeatedly and incorrectly state[d] in its November 20, 2008 Opinion that] 'the New York court has yet to assert jurisdiction over the Nye, Brown, and Bond plaintiffs.'"  (Def.'s Br. Supp. Mot. Recons. 12.)  Ingersoll-Rand argues that "[t]he New York court indisputably possesses personal jurisdiction over" the 55 plaintiffs' that reside in that state, and on that basis claims that the New York court "assumed jurisdiction over these individuals months before this Court assumed jurisdiction over Ingersoll-Rand in the Nye and Brown actions."  (Id. at 13.)

Ingersoll-Rand's arguments with respect to which court first obtained jurisdiction are unavailing.  The company implies that this court ruled that the New York court did not have jurisdiction over the 55 Nye, Brown, and Bond plaintiffs that reside in that state.  Although the court made two erroneous statements to the effect that "none of those individuals reside in New York," it stated elsewhere that "55 of the 130 plaintiffs in Nye, Brown, and Bond reside in New York."  2008 U.S. Dist. LEXIS 95450, at *16, *24, *26.  More importantly, the court stated that it made no ruling regarding whether the New York court could exercise personal jurisdiction over all the Nye, Brown, and Bond plaintiffs.  Id. at *25 (stating that the existence of jurisdiction in the New York court was "outside the scope of this ruling"), *29 ("[I]t is beyond the scope of this ruling to opine on whether the plaintiffs are subject to the New York court's jurisdiction.")

29

Rather than holding that the New York court does not have jurisdiction over the Nye, Brown, and Bond plaintiffs, this court ruled in its November 20, 2008 Opinion that the pending disputes over that jurisdiction were significant to its abstention analysis.  The court stated that, "[s]ince the New York court has not yet decided whether it enjoys jurisdiction over the plaintiffs, it cannot be argued that the state proceeding first 'obtained' jurisdiction for the purposes of abstention."  Id. at *29.  Even if the New York court finds that it does have jurisdiction, that court maintains the option to stay the state proceeding in order to ameliorate the danger of duplicative litigation and conflicting rulings.  Thus, the court found that it was unclear whether granting the relief sought by Ingersoll-Rand, namely dismissal in favor of the New York action, would have deprived the 75 plaintiffs who do not reside in that state of their right to litigate their claims by putting them out of court entirely.  Since Colorado River and its progeny apply only to "concurrent" state proceedings and the New York court has not yet decided whether it enjoyed jurisdiction by denying the pending motion to dismiss, see 424 U.S. at 809, the court found that the possibility that the state action may not proceed meant that the New York court could not have "obtained" jurisdiction within the meaning of that term as used in relation to abstention.  In light of the fact that the motion to dismiss the state proceedings has still not been decided, the court's November 20, 2008 holding applies with equal force today, and counsels against granting a stay or dismissal.  Therefore, Ingersoll-Rand's Motion for Reconsideration will be denied.[7]

### B.  Motion to Stay or Dismiss the Bond Action

Pursuant to its contention that the court's November 20, 2008 Opinion did not apply to the Bond action, Ingersoll-Rand moves to stay or dismiss that proceeding.  In doing so, the

---

[7] The court notes that no other factor weighs in favor of abstention.  Thus, even if the New York court did "obtain jurisdiction" before this court, abstention would not be justified.  See Colorado River, 424 U.S. at 818 (stating that "no one factor is necessarily determinative" in deciding whether abstention is appropriate).

company refuses to acknowledge the clear statement in the November 20, 2008 Opinion that the
<u>Bond</u> action was consolidated with the <u>Nye</u>, and <u>Brown</u> actions and Ingersoll-Rand's arguments
in favor of staying or dismissing those actions were rejected as to all three cases.  <u>See</u> 2008 U.S.
Dist. LEXIS 95450, at * 17 ("[T]he identical motions to dismiss or stay the Nye, <u>Brown</u>, and
<u>Bond</u> actions will be dealt with together.").

      Ingersoll-Rand contends that this court should stay or dismiss the <u>Bond</u> proceeding in
favor of the New York action because (1) "Third Circuit courts … regularly defer to the first
filed action," and the New York proceeding was initiated before federal litigation in the <u>Bond</u>
action, (2) refusal to stay or dismiss would waste judicial resources by requiring piecemeal
litigation, (3) the claims at issue involve state law causes of action that are best adjudicated by a
state court, (4) only the New York proceeding can fully decide the rights of all possible
claimants, and (5) the New York state court is the more convenient forum.  Those contentions
are nearly identical to the ones asserted in the company's original Motion to Stay or Dismiss the
<u>Nye</u> and <u>Brown</u> actions, and the current Motion will be denied for the same reasons as the first.

      As an initial matter, the court notes that the <u>Bond</u> plaintiffs assert claims for breach of
contract, promissory estoppel, and attorneys' fees under Texas law.  <u>See</u> (<u>Bond</u> Compl. ¶¶ 41-
55).  Those claims are identical to the ones at issue in the <u>Nye</u> and <u>Brown</u> proceedings.  <u>See</u> (<u>Nye</u>
Compl. ¶¶ 86-101); (<u>Brown</u> Compl. ¶¶ 73-87.) However, Ingersoll-Rand claims that the <u>Bond</u>
action "differs, in several important respects, from the <u>Nye</u> and <u>Brown</u> proceedings."  (Def.'s
Reply Br. Supp. Mot. Dismiss <u>Bond</u> 1.)  The two main differences between the <u>Bond</u> action and
the <u>Nye</u> and <u>Brown</u> proceedings on which Ingersoll-Rand bases its argument are (1) the fact that
the New York proceeding was filed six months before the <u>Bond</u> action, and (2) the fact that three
of the defendants in the New York action did not join the <u>Bond</u> litigation.  Additionally, counsel

for Ingersoll-Rand contended for the first time at oral arguments that this court should stay or dismiss the Bond proceeding because the common issue in the three cases – whether the 2000 SIP expired prior to December 31, 2002 – will not be decided until after the court rules on whether the Nye and Brown plaintiffs waived their claims to benefits under that agreement by accepting payments pursuant to the 2004 Plan.  Thus, Ingersoll-Rand argues that a refusal to stay or dismiss the Bond action would subject the plaintiffs in that case to unreasonable delay by forcing them to wait for relief until after discovery relating to the waiver issue in Nye and Brown is completed.

Ingersoll-Rand's argument that abstention is justified because the New York action was filed six months before the Bond proceeding is unavailing.  As the court made clear in its November 20, 2008 Opinion, "it is not the date the actions are filed which is significant for the purposes of our abstention analysis.  Rather, courts look to 'the order in which jurisdiction was obtained by the concurrent forums' in deciding whether to abstain in favor of a state court action."  2008 U.S. Dist. LEXIS 95450, at *28 (emphasis in original) (quoting Colorado River, 424 U.S at 819).  For the same reasons discussed above with regard to the Nye and Brown actions, the New York court has not "obtained" jurisdiction over the Bond action.  Only nine of the 17 Bond plaintiffs reside in New York, and a Motion to Dismiss that action for lack of jurisdiction is pending.  Although it is beyond the scope of this Opinion to speculate as to how the New York court will rule, it is significant for the purposes of our abstention analysis that the state court has not decided whether it has jurisdiction over the eight Bond plaintiffs who do not reside in that state.  If this court dismisses the Bond action and the New York court decides that it does not enjoy jurisdiction over the plaintiffs who reside elsewhere, those individuals may be put out of court entirely.  Even if the New York court decides that it has jurisdiction over all 17

individuals, it retains the option to stay the state proceedings in order to ameliorate the danger of

duplicative litigation and conflicting rulings.  Therefore, the possible existence of jurisdiction in

the New York court does not support abstention, and the fact that the New York action was filed

six months prior to the <u>Bond</u> proceeding is irrelevant.  <u>See</u> 2008 U.S. Dist. LEXIS 95450, at *28.

  The company's second contention, that the existence of three New York defendants who

did not join the Bond litigation requires this court to abstain in order to avoid duplicative

litigation, is similarly meritless.  As discussed above, the danger of piecemeal litigation resulting

from the fact that three defendants in the New York action are not party to the proceedings

before this court does not justify abstention because there is no "strongly articulated federal

policy against piecemeal litigation in the specific context of th[is] case."  <u>Ryan</u>, 115 F.3d at 198.

"<u>Colorado River</u> abstention must be grounded on more than just the interest in avoiding

duplicative litigation."  <u>Spring City</u>, 193 F.3d at 171-72.  Since there is no strong Congressional

policy against the piecemeal litigation of the contract law issues posed by the <u>Bond</u> action, that

proceeding is subject to the "general rule regarding simultaneous litigation of similar issues in

both state and federal courts … that both actions may proceed until one has come to judgment, at

which point that judgment may create a res judicata or collateral estoppel effect on the other

action."  <u>Id.</u> at 172.

  Ingersoll-Rand's contention during oral arguments that this court should abstain in favor

of the New York action in order to avoid delaying possibly recovery by the <u>Bond</u> plaintiffs is

inexplicable given the fact that the plaintiffs vigorously oppose the company's request to stay or

dismiss the federal proceedings.  Furthermore, the Ingersoll-Rand's argument obfuscates the

nature of the issues, and reverses the logical order in which they will need to be addressed.  The

question of whether the 2000 SIP expired prior to December 31, 2002 is a critical threshold issue

in all three actions.  If the court finds that the agreement expired, no plaintiff in any of the actions will be entitled to relief, and the question of whether the Nye and Brown plaintiffs waived their rights to payment under the 2000 SIP by accepting benefits pursuant to the 2004 Plan will be moot.  Therefore, Ingersoll-Rand's argument that the court will first have to determine whether such a waiver took place and will only consider the ongoing validity of the 2000 SIP after making a ruling on the waiver question is fallacious, and the Bond plaintiffs will not be subjected to unnecessary delay.

Other than the three claims discussed above, Ingersoll-Rand's Motion to Stay or Dismiss the Bond action asserts no arguments that were not included in the company's original Motion to Stay or Dismiss the Nye and Brown proceedings.  Having already ruled that the contract law claims at issue in those cases do not justify abstention, the court finds that the identical claims advanced by the Bond plaintiffs cannot form the basis for a stay or dismissal.  See 2008 U.S. Dist. LEXIS 95450, at *30-32.  Ingersoll-Rand's other contentions – that only the New York proceeding can fully decide the rights of all possible claimants and the New York state court is the more convenient forum – have also been previously rejected.  See Id. at *24-25, *32.  As stated above, the possibility of piecemeal litigation does not justify abstention because there is no "strongly articulated federal policy against piecemeal litigation in the specific context of th[is] case."  Ryan, 115 F.3d at 198.  Ingersoll-Rand's assertion that this court should abstain because the New York court is a more convenient forum ignores (1) the deference given a plaintiff's chosen forum, and (2) the fact that this court is well-situated to oversee the litigation process because it is close to Ingersoll-Rand's headquarters, and thus near many of the documents and witnesses that will need to be produced during the discovery process.  See 2008 U.S. Dist.

LEXIS 95450, at *24-25.  Therefore, the company's Motion to Stay or Dismiss the <u>Bond</u> proceeding will be denied.

### III. CONCLUSION

For all the foregoing reasons, Ingersoll-Rand's Motion for Reconsideration of the court's November 20, 2008 Opinion and Order is denied.  The company's Motion to Stay or Dismiss the <u>Bond</u> proceeding is also denied.

The court will enter an order implementing this Opinion.

<u>**s/ Dickinson R. Debevoise**</u>
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: January 22, 2009

35