**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

THEODORE E. BOND, CLAUDE FEDER, GRAHAM A. HUGHES, JATINDAR KATARIYA, DOUG R. KEILL, ROBERT J. KENVILLE, BEVERLY KRUGER, FOSTER KNEELAND, GARY KYTTLE, CAROLE MIZZONI, As Executrix for the Estate of Anthony Mizzoni, ROBERT E. MURPHY, THOMAS D. O'LEARY, ROBERT A. PLANT, GORDON B. REULAND, ARTHUR E. SIMMONS, CHRISTOPHER SLATER, and JOHN WAGGOTT,

Plaintiffs,

v.

INGERSOLL-RAND COMPANY,

Defendant.

Consolidated Case No. 08-3481(DRD)
Original Case No. 08-5371(DRD)

**OPINION**

Greenberg Dauber Epstein & Tucker
One Gateway Center, Suite 600
Newark, New Jersey 07102
By: Linda G. Harvey, Esq.

Brown & Tarantino, LLC
1500 Rand Building
14 Lafayette Square
Buffalo, New York 14203
By: Kevin P. Wicka, Esq.
Attorneys for Plaintiffs.

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
By: Anthony Bartell, Esq.

Steven Weisman, Esq.
Attorneys for Defendant
Ingersoll-Rand Company

**Debevoise, Senior District Judge**

In an opinion filed October 25, 2010 the Court found that the Plaintiffs in this case were entitled to summary judgment that the termination of their employment with Dresser-Rand ("Dresser-Rand") constituted "retirement" within the meaning of a Sales Incentive Plan (the "SIP").[1] Bond v. Ingersoll-Rand Co., No. 08-3481, 2010 U.S. Dist. WL 4348137 (D.N.J. Oct. 25, 2010) ("Bond Opinion"). A number of anomalies occurred during the Dresser-Rand termination process of most, if not all, of the fourteen Plaintiffs whose retirement status is challenged. The Court explained the anomalies as evidence of a plan (1) to prevent the issue of the continued validity of the SIP from arising, (2) to make it appear that each departing employee was leaving solely because of a reduction in force, and (3) to camouflage the fact that each of these employees was retiring.

The Court uses the term "anomalies in the termination process" as a short-hand means of referring to the frequent occasions during the retirement process when Dresser-Rand referred in its documents to an indisputably retirement action as a reduction in force or redundancy. For example, Robert Kenville wrote Human Resources expressing an interest in early retirement. The response read, "[t]his letter is in response to your request for a reduction in force from Dresser-Rand." In the case of Beverly Kruger's request for early retirement, the termination Agreement that Dresser-Rand prepared correctly recited that it was in response to Kruger's

[1] There are seventeen Plaintiffs in this case. In its cross-motion for summary judgment Ingersoll-Rand Company ("Ingersoll-Rand") did not challenge the retirement status of Plaintiffs Claude Feder, Jatindar Katariya and Robert A. Plant.

request for early retirement, but Dresser-Rand's personnel officer noted it as a "Problem Description" and entered the termination in Oracle as an "involuntary RIF [reduction in force]." In the case of Robert Murphy the termination Agreement that Dresser-Rand prepared correctly referred to his request to volunteer for early retirement, but in its internal Employee Change Form Dresser-Rand reported the termination as an "Involuntary RIF." As described in the Bond opinion, the record is replete with instances of Dresser-Rand creating initial internal termination records which refer to an admittedly retirement event as an involuntary RIF. After these initial anomalous record entries, Dresser-Rand's records with respect to these Plaintiffs revert to references to "retirement", "retirees" and the equivalent.

The Court in its Opinion provided what appeared to it to be the explanation of the entries in termination documents that directly contradict the undisputed facts. The long and short of the matter is that whatever the explanation of the anomalies, there remains unchanged the underlying finding that the fourteen Bond Plaintiffs retired from Dresser-Rand.

Ingersoll-Rand moved with extraordinary vigor for: (1) reconsideration, pursuant to Local Rule 7.1(i), or, alternatively, certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and (2) leave to file an over length reconsideration brief. Ingersoll-Rand's principal objection to the opinion was its apparent application of summary judgment standards when setting forth the reasons for the anomalies that occurred during the termination process.

Full justice to Ingersoll-Rand's position and the vigor with which its position has been argued can best be served by selective quotations from its brief:

> The Court reached this ruling only by confusing and conflating Dresser-Rand and Ingersoll-Rand and the very different roles played by these companies. The Court then used this conflation to

manufacture, out of whole cloth, a scheme by:

> Ingersoll-Rand . . . to make it appear that its terminated employees left its employ solely because of a reduction in force and to disguise the fact that simultaneously the employees retired from Dresser-Rand and were treated as retirees.

Not only do no facts support the existence of this nefarious scheme, the Bond plaintiffs (to their credit and as officers of the court) did not even allege this scheme.

The Court, by inferring the existence of an Ingersoll-Rand and/or Dresser-Rand conspiracy, violated its most fundamental summary judgment duty to construe all evidence in the light most favorable to defendant and to draw all inferences in defendant's favor.

(Def.'s Br. Supp. Mot. Recons. 1)

This Court's summary judgment ruling inflicts manifest injustice on defendant. The Court improperly resolved factual disputes and, more egregiously, manufactured inferences which it then drew against defendant. The Court can alleviate this manifest injustice only by reconsidering and reversing its faulty ruling.

(Id. at 3)

The Court's failure to distinguish between Ingersoll-Rand and Dresser-Rand bears critical significance because this error led inexorably to its improper "camouflage" inference. The truth, conversely, eviscerates completely the Court's inference. Because Dresser-Rand bore (and bears) no liability under the SIP, it possessed absolutely no incentive or motive to mischaracterize the reasons for the Bond plaintiffs' departure from the company. Dresser-Rand truthfully recorded that these plaintiffs left the company for the reason of a RIF and not for the reason of retirement. And, because Ingersoll-Rand played absolutely no role in terminating these plaintiffs from Dresser-Rand, it possessed no means by which to mischaracterize their departure. No evidence, therefore, supports this Court's improper inference that anyone, must (sic) less Ingersoll-Rand implemented a Machiavellian ruse to "disguise" plaintiffs' alleged retirement from Dresser-Rand.

> (Id. at 5-6) (footnotes omitted)
>
> The Court, with zero factual support (and not a single record reference), erroneously merged the activities of the two separate companies, improperly determined the corporate motivations of the two companies, and somehow inferred the two companies conspired in a strategy to prepare for litigation that might never arise from a Dresser-Rand sale that might never occur.
>
> (Id. at 7)

Without accepting the entirety of Ingersoll-Rand's forcefully expressed views, the Court agrees that it cannot enter a summary judgment that the anomalies in the Dresser-Rand termination process are explained by an Ingersoll-Rand/Dresser-Rand plan to camouflage the fact that each of the fourteen employees was retiring. The holding of the Bond Opinion, however, was that, applying summary judgment standards, within the meaning of the SIP, each of those employees left Dresser-Rand for the reason of retirement. This holding is in no way dependent upon the reasons for the anomalies in the termination process. Rather, the finding that the 14 Plaintiffs retired is independent of, and in no way relies on, the reasons for the anomalies.

There is no dispute that during the period of these retirements Dresser-Rand engaged in a reduction in force. As stated in the Bond Opinion, however,

> Dresser-Rand's purposes for termination in each case is not the critical issue. The critical issue is the employee's motivation, which, as to each Plaintiff, was retirement, and the manner in which [Dresser-Rand] handled the departing employee, which in each case, was as a retiree. This fulfills the purpose of the SIP which was to permit persons who stayed with Dresser-Rand until they obtained retirement status to share in the profits to which they had contributed and to encourage them to stay to that time.

Bond Opinion at *13. "The fact that Dresser-Rand was engaged in a reduction in force is in no

way inconsistent with the Bond Plaintiffs' retirement." Bond Opinion at *14.

The Court's statements concerning the reasons for the anomalies that occurred during the termination process can be omitted altogether without affecting the critical finding that the fourteen Plaintiffs were retirees within the meaning of the SIP. In response to Ingersoll-Rand's motion the Court will delete all but the last three paragraphs of Part IV of the Bond Opinion and will delete the references to Dresser-Rand's efforts to develop a defense against a potential SVU claim or camouflage the retirement aspects of the terminations that appear in the descriptions of the termination of Robert Kenville, Beverly Kruger and Anthony Mizzoni. The motivation of the termination anomalies does not affect the retirement finding.

## I. Motion for Reconsideration

**A. Standard of Review** "[I]t is well-established in this district that a motion for reconsideration is an extremely limited procedural vehicle." Resorts Int'l v. Great Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992). As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." N. River Ins. Co. v. CIGNA Reins. Co., 52 F. 3d 1194, 1218 (3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a motion for reconsideration may not be premised on legal theories that could have been adjudicated or evidence which was available but not presented prior to the earlier ruling. See Id. Local Civil Rule 7.1(i), which governs such motions, provides that they shall be confined to "matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has

'overlooked.'" The word "overlooked" is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." Resorts Int'l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

A decision suffers from "clear error" only if the record cannot support the findings that led to that ruling. United States v. Grape, 549 F. 3d 591, 603-04 (3d Cir. 2008) (citations omitted). Thus, a party must do more than allege that portions of a ruling were erroneous in order to obtain reconsideration of that ruling; it must demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in "manifest injustice" if not addressed. See Grape, 549 F. 3d at 603-04; N. River Ins., 52 F. 3d 1218. Mere "disagreement with the Court's decision" does not suffice. P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001).

**B. Ingersoll-Rand's Remaining Grounds:** The principal ground for Ingersoll-Rand's motion for reconsideration is that the Court committed gross error when it found, applying summary judgment standards, that the anomalies in the termination process were occasioned by Ingersoll-Rand/Dresser-Rand's effort to camouflage the retirement aspects of the terminations. Agreeing that this finding cannot be supported by summary judgment standards, the Court has stricken those findings.

What remains is the dispositive position of the Court's opinion (28.5 of the Slip Opinion's 32 pages) and the Court's holdings that, applying summary judgment standards,

> . . . the undisputable facts establish that each of the Bond Plaintiffs left Dresser-Rand for reason of retirement within the meaning of the SIP.

Bond Opinion at *15.

> . . . considered in light of all the facts and circumstances, the Court concludes that there is no evidence to support a finding that either the Bond Plaintiffs or the Company representatives who negotiated the severance agreements intended the releases to cover the SVU payments under the SIP.

Bond Opinion at *16.

> . . . the Bond Plaintiffs' motion for summary judgment will be granted to the extent that they seek a holding that their termination of employment with Dresser-Rand was a retirement within the meaning of the SIP, and that they have not released any claims that they may have under the SIP. . .

Bond Opinion at *16.

The findings were based on undisputed evidence as to the termination of each of the 14 Plaintiffs whose retirement Ingersoll-Rand challenged. See Bond Opinion at *4-13. They were in no way dependent on the findings that the Court has stricken from the Bond Opinion pursuant to this ruling. As noted above, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." Resorts Int'l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

It is undisputed that Dresser-Rand was undergoing a downsizing, but as the Bond Opinion noted, "Dresser-Rand's purposes for termination in each case is not the critical issue." Bond Opinion at *13. Even if the termination were in the context of a downsizing, the critical

issue is whether the employee retired and whether Dresser-Rand treated him or her as a retiree. Ingersoll-Rand disagrees with this formulation of the issues and contends that if the termination was in the context of a reduction in force or downsizing an employee was barred from receiving a SVU under the SIP. This disagreement is to be resolved by an appeal, not on a motion for reconsideration.

Ingersoll-Rand advances other grounds for reconsideration, namely, (1) the Court ignored controlling law on contractual integration clauses by erroneously relying on the SIP (an Ingersoll-Rand obligation, not an obligation of Dresser-Rand which was the party to the Termination Agreements) and (2) the Court ignored well established judicial estoppel law when it did not give effect to Arthur E. Simmons's contradictory statements as to his retiree status made in a prior divorce proceeding. Each of these issues was extensively briefed and argued during the summary judgment proceedings, and decided in the Bond Opinion.

The Bond Opinion having been amended to eliminate unnecessary findings that were not in accord with summary judgment standards, Ingersoll-Rand fails to meet the requirements for a motion for reconsideration. There has been no intervening change in controlling law and it has not been shown that that new evidence is available that was not previously available.

A decision suffers from "clear error" only if the record cannot support the findings that led to the ruling. United States v. Grape, 549 F. 3d 591, 603-04 (3d Cir. 2008). Thus, a party must do more than allege that portions of the ruling were erroneous in order to obtain reconsideration of that ruling; it must demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in "manifest injustice" if not addressed. See United States v. Grape, 549 F. 3d 591, 603-04 (3d Cir. 2008); N. River v.

CIGNA Reins. Co., 52 F. 3d 1194, 1218 (3d Cir. 1995). Mere "disagreement with the Court's decision" does not suffice. P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001).

Ingersoll-Rand's remaining grounds for reconsideration constitute nothing more than mere disagreement with the Court's decision, and that disagreement is insufficient to support its motion.

## II. Interlocutory Appeal

Ingersoll-Rand moves, in the alternative, pursuant to 28 U.S.C. § 1292(b) for certification of an interlocutory appeal from the Court's October 25, 2010 summary judgment ruling. To achieve that relief, it must show that there is (1) a controlling question of law; (2) as to which there is a substantial ground for a difference of opinion; and (3) that an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(6). "A controlling question of law, for the purposes of Section 1292(b), is 'every order which, if erroneous, would be reversible error on final appeal." Katz v. Live Nation, Inc. No. 09-3740, 2010 U.S. Dist. LEXIS 95310, at *7 (D.N.J. Sept. 2, 2010) (Internal citations omitted). "'Controlling' means 'serious to the conduct of the litigation, either practically or legally.'" Id.

Ingersoll-Rand contends that the ruling in the Bond Opinion "meets the 'controlling question of law' requirement because the Court diverged wildly from the proper summary judgment standard under Federal Rule 56(c). The Court engaged in extensive fact-finding and repeatedly drew inferences against defendant." (Def.s' Br. Supp. Mot. Recons. 16).[2] Ingersoll-

[2] The text of Rule 56 has been amended effective December 1, 2010, but none of the changes affect the findings of the Bond Opinion. The standards formerly contained in sub-section 56(c) are now contained in sub-section 56(a) but, for purposes of this opinion, the court

Rand's principal point of attack was the Court's explanation of the anomalies in the termination. Having deleted that explanation from the opinion, there remains the finding that the Bond Plaintiffs retired within the meaning of the SIP. The Court based its ruling on undisputable facts, which were viewed in a light most favorable to Ingersoll-Rand.

The Bond Opinion included a detailed account of each Plaintiff's employment history and his/her retirement from Dresser-Rand. The Opinion recited how Dresser-Rand subsequently treated each Bond Plaintiff as a retiree. All this was based upon undisputed testimonial or documentary evidence in accordance with Rule 56.

The Court having deleted from its Opinion its finding as to the reasons for the anomalies in the termination process, there is no basis for Ingersoll-Rand's contention that "the Court diverged wildly from the proper summary judgment standard under Federal Rule 56(c)." The proper summary judgment standard was applied to arrive at the ultimate finding that the fourteen Bond Plaintiffs retired within the meaning of the SIP. Thus there is no controlling question of law that would lead to reversal on appeal.

Similarly, there can be no substantial ground for a difference of opinion about the summary judgment standard. Ingersoll-Rand's disagreement with the Court's ruling does not constitute a substantial ground for difference of opinion as to the controlling question of law.

Finally, an interlocutory appeal would not advance the litigation. It would, in fact, further delay an already much-delayed case. The second issue raised in the pending summary judgment motions is whether the SIP has terminated. If it is determined that the SIP has terminated, the

---

will continue to reference sub-section 56(c) when citing to the relevant standard for summary judgment.

issue of the Bond Plaintiffs' retirement becomes moot. Further, there are three Bond Plaintiffs whose retirement Ingersoll-Rand does not challenge; the case continues as to them whatever the resolution of the retirement issue may be as to the fourteen Bond Plaintiffs Ingersoll-Rand challenged.

If the instant motion ruling were certified for interlocutory appeal it would not eliminate the need for trial or remove complex issues from the case. It would undoubtedly cause further delay in completion of discovery and resolution of the balance of the pending motions. The better course is to complete discovery (upon which a decision on the balance of the pending motion awaits), wrap up any other pretrial proceedings, and, if necessary, conduct a trial. After that the Court of Appeals, if there is an appeal, can address the many issues in this case at one time. It would not advance the termination of this litigation if the Court of Appeals were to engage in piece-meal review of these issues as the case proceeds. For these reasons the motion for certification for an interlocutory appeal will be denied.

Ingersoll-Rand also moved for leave to file an over length reconsideration brief. The original motions were exhaustively briefed. Both parties have had ample opportunity to brief the pending motions, and the Court sees no need for additional briefing. The motion for leave to file an over length reconsideration brief will be denied.

## III. Conclusion

Ingersoll-Rand's motion for reconsideration will be granted to the extent that the sections of the Court's Opinion dated October 25, 2010, that set forth the reasons for the anomalies that appeared in Dresser-Rand's processing of the Bond Plaintiff's employment termination, will be withdrawn; and otherwise the motion for reconsideration will be denied. Ingersoll-Rand's

motion for certification of an interlocutory appeal from the Court's October 25, 2010 summary judgment ruling will be denied.

***s/ Dickinson R. Debevoise***

December 10, 2010

DICKINSON R. DEBEVOISE
U.S.S.D.J.