**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

WALTER NYE, ET AL,

                Plaintiffs,

v.

INGERSOLL RAND COMPANY,

                Defendant.

Consolidated Civ. No. 08-3481 (DRD)
Assoc. Civil Action Nos. 08-4260 and 08-531

**O P I N I O N**

*Appearances by:*

THE LANIER LAW FIRM, PLLC
by:    Richard D. Meadow, Esq.
         Evan M. Janush, Esq.
126 East 56th Street
6th Floor
New York, NY 10022

THE LANIER LAW FIRM, PC
by:    W. Mark Lanier, Esq.
         Eugene R. Egdorf, Esq.
6810 FM 1960 West
Houston, Texas 77069

    *Attorneys for Plaintiffs, Walter Nye, et. al.*

GREENBERG DAUBER EPSTEIN & TUCKER
by:    Linda G. Harvey, Esq.
One Gateway Center, Suite 600
Newark, NJ 07102

BROWN & TARANTINO, LLC
by:     Kevin P. Wicka, Esq.
1500 Rand Building
14 Lafayette Square
Buffalo, New York 14203

  *Attorneys for Plaintiffs, Theodore Bond, <u>et. al.</u>*

McCARTER & ENGLISH, LLP
by:     Anthony Bartell, Esq.
  Steven H. Weisman, Esq.
  Jason M. Alexander, Esq.
  Lauren E. Ciancia, Esq.
  Anne E. Mathews, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

  *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

  This consolidated case originated as three separate cases: <u>Nye, et. al. v. Ingersoll Rand Company</u>, Civ. No. 08-3481, <u>Brown, et. al. v. Ingersoll Rand Company</u>, Civ. No. 08-4260, and <u>Bond, et. al. v. Ingersoll Rand Company</u>, Civ. No. 08-5371. Plaintiffs are each former employees of the Dresser-Rand company ("Dresser-Rand"), a former subsidiary of Defendant Ingersoll-Rand Company ("Ingersoll Rand"). Plaintiffs allege that Defendant breached the terms of a Sales Incentive Plan ("2000 SIP") when it failed to pay them benefits due upon the sale of Dresser-Rand. Defendant claims that the 2000 SIP expired prior to the sale and that by agreeing to a new incentive plan (the "2004 Plan") Plaintiffs acknowledged that the 2000 SIP had expired and was no longer valid. Plaintiffs contend, in part, that they were fraudulently induced into agreeing to the 2004 Plan.

  Presently before the Court is Defendant's appeal from Magistrate Judge Shipp's November 19, 2010 Order modifying two subpoenas issued by the Defendant and clarifying the

2

terms of his prior Orders with respect to two others. Defendant claims that Judge Shipp abused his discretion by refusing to permit them to depose two of Plaintiffs' former counsel to determine the extent to which Plaintiffs sought the advice of counsel before entering into the 2004 Plan. Defendant further contends that Judge Shipp's ruling concerning two subpoenas issued outside this district constituted an impermissible advisory opinion.

For the reasons set forth below, Magistrate Judge Shipp's November 19, 2010 order is AFFIRMED, except that it is REVERSED with respect to the depositions of Scott Steiner and Kevin Kostyn, which will be allowed to take place by telephone and limited to one hour.

## I. BACKGROUND

The facts underlying this case stem from efforts by Defendant Ingersoll Rand-Company ("Ingersoll Rand") to sell Dresser-Rand Company ("Dresser-Rand"), a subsidiary corporation. The background of those efforts and procedural history of the ensuing litigation are discussed at length in this court's prior Opinions. See, e.g., Doc. No. 355. The relevant facts are as follows.

In early 2000, Ingersoll Rand began efforts to sell Dresser-Rand, a recently acquired subsidiary. To further that purpose and to achieve a desirable sale price for Dresser-Rand, Ingersoll Rand adopted the Sales Incentive Plan ("2000 SIP"). The 2000 SIP was meant "to reward key employees for their contributions toward maximizing [earnings] and consequently, a desirable sale price for Dresser-Rand Company." It did so by providing Sale Value Units ("SVU"s) to select employees that would trigger payments from Ingersoll Rand once Dresser-Rand was sold.

The 2000 SIP included sections governing its "effective date[s]" and awards grants to employees who were terminated before the closing of the sale. The former provided that "[t]he

plan is effective September 1, 2000 and will remain in effect until Dresser-Rand Company is sold," while the termination provision stated:

> An employee who voluntarily terminates or is involuntarily terminated by the Company for any reason before the closing date of the sale, with the sole exceptions of death, disability, or retirement shall not receive or be entitled to any award from this plan. For those employees [sic] who leave the Company for the reason of death, disability or retirement will receive a pro-rated award based on the time they were actively employed during the period from the effective date of this plan to December 31, 2002. Any payment due will be made within 90 days from December 31, 2002.

Additionally, the SIP contained a section on how the value of an SVU should be determined, which provided in part that "[a]ny award under this plan will be paid no later than 90 days following the closing date of the sale of Dresser-Rand Company."

When Dresser-Rand was not sold by December 31, 2002, Ingersoll Rand abandoned its efforts for a time and then, in 2004, initiated a new attempt to sell. In connection with its renewed sale efforts, Ingersoll Rand devised a new sale reward plan (the "2004 Plan"). In letters dated July 16, 2004 and August 26, 2004, Ingersoll Rand announced the terms of the new plan, noting that "the sale value units awarded for 2001, 2002 and 2003 have expired, as have all rights under that plan." (Def. Br. Ex. 1).

On October 31, 2004, Ingersoll Rand sold Dresser-Rand. In 2005 it entered into litigation with a number of employees who had left the company prior to the sale date (the "Antoun" and "Barnett" actions) (Ingersoll Rand Company v. Barnett, et.al., and Antoun, et. al. v. Ingersoll-Rand, Consol. Civ. No. 05-1636 (DRD)). The Antoun and Barnett plaintiffs claimed that the 2000 SIP had not terminated and that as retirees, they were entitled to pro-rated benefits under the 2000 SIP. On October 26, 2006, this Court ruled that the 2000 SIP had not expired and that the Barnett and Antoun Plaintiffs were "retirees" as contemplated under the agreement.

4

Following the decision, on January 15, 2008, both cases were dismissed pursuant to a confidential settlement.

The consolidated action currently before the court asserts claims for breach of the same agreement that was at issue in Antoun and Barnett— the 2000 SIP. However, unlike the retirees in Antoun and Barnett, many of the Nye and Brown plaintiffs worked for Dresser-Rand until it was sold.[1] While employed by Dresser-Rand, each of these plaintiffs signed and returned a copy of the letter setting forth the terms of the 2004 Plan.[2] Defendant Ingersoll Rand contends that by signing and returning this letter, the plaintiffs acknowledged and accepted that the 2000 SIP had expired. (Def. Br. 3). Defendant further contends that by accepting payment under the 2004 Plan plaintiffs surrendered any right to payment under the 2000 SIP. (Def. Br. 3-4). Plaintiffs respond that they were compelled to sign the 2004 Plan through a series of "threats and fraudulently inducing statements" from Ingersoll Rand. (Nye Second Amended Complaint 11) (Doc. No. 173).

Discovery has revealed that some individual plaintiffs consulted with counsel prior to agreeing to the 2004 Plan. One such plaintiff, John Giddings, sent a series of emails discussing this advice to other potential plan recipients (the so-called "Utopia" messages). Plaintiffs sought to withhold the Utopia messages from production pursuant to a common interest privilege. On July 31, 2009, Defendant moved for an order compelling the production of the Utopia messages, claiming that the messages were material and necessary for its defense against Plaintiffs' charge that it fraudulently induced Plaintiffs to agree to the 2004 Plan. (Doc. No. 102).

---

[1]   In contrast, the Bond Action involves individuals who worked for Dresser-Rand at the time that the 2000 SIP was promulgated but left the company prior to the sale.

[2]   Most such plaintiffs also received benefits under the 2004 Plan. However three Brown plaintiffs, Arthur Titus, William Rostan, and Gregg Johnson, left Dresser Rand before its sale and did not receive any benefits under the 2004 Plan.

On December 23, 2009 Judge Shipp entered an Opinion and Order instructing Plaintiffs to "disclose, via document production, deposition testimony or otherwise, any information related to the Utopia email messages and/or communications pertaining to Plaintiffs' decision to accept the 2004 Plan and sign the release terms (Doc No. 152). Upon Plaintiffs filing a motion for clarification and/or reconsideration, the Court subsequently upheld and clarified its prior decision in an Order dated March 2, 2010. (Doc. No. 166).

On the basis of these orders, Ingersoll Rand has served subpoenas upon several of the Plaintiffs and twelve of Plaintiffs' prior attorneys requesting depositions and production of documents. Multiple depositions have been taken. On September 17, 2010 Plaintiffs moved to quash and/or modify two of the subpoenas, those served upon Kevin Kostyn. Esq. ("Mr. Kostyn") and Scott J. Steiner, Esq. ("Mr. Steiner") as beyond the scope of the Court's prior rulings. By separate submissions to the Court, the Plaintiffs also asked that Judge Shipp review, *in camera*, documents responsive to subpoenas served on two other former counsel, Lipsitz Green Scime Cambria LLP ("Lipsitz Green"), and Phillips Lytle, LLP ("Phillips Lytle") to determine whether the documents fell within the scope of discovery required by the December 23, 2009 and March 2, 2010 Orders.

The Kostyn and Steiner subpoenas requested the depositions of the attorneys, as well as the production of documents responsive to the following demands:

> 1.  All documents in your possession custody or control -- including, but not limited to any time diaries, billing records. electronic mail messages. correspondence and memoranda -- relating to or reflecting any Plaintiffs consideration of accepting and or decision to accept the 2004 Plan and/ or payment thereunder, including without limitation all documents concerning your consideration of such issues, advice you provided to any Plaintiff and/or communications with any Plaintiff in connection therewith.
>
> 2.  All documents in your possession, custody or control - including, but not limited to, any time diaries, billing records, electronic mail messages,

6

>correspondence and memoranda - that identify any individuals with whom you met and/or communicated concerning their acceptance and/or decision to accept the 2004 Plan and/or payment thereunder.

On November 19, 2010 Judge Shipp issued an Order modifying the subpoenas issued to Mr. Kostyn and Mr. Steiner. The Order held that (1) the December 23, 2009 and March 2, 2010 orders did not authorize depositions of Plaintiffs' prior counsel; and (2) to the extent that the subpoenas sought "all documents concerning your consideration of the issues [related to the 2004 SIP]" irrespective of whether the documents reflect information that was communicated with Plaintiffs, they were outside the scope of the December 23, 2009 and March 2, 2010 Orders. (Nov 19 Order 9-10) (Doc. No. 375). Consistent with this ruling, Judge Shipp ordered the Kostyn and Steiner subpoenas be modified to include the following language:

>Pursuant to an Order entered by the U.S. District Court for the District of New Jersey the previously served subpoena has been modified as follows:
>
>This subpoena does not require the disclosure of any information, communications memorandum or other such documents that were not explicitly communicated to your client including, but not limited to, internal memorandums, time diaries or billing records.
>
>Please note that your deposition is no longer required or permitted by order of the Court.

With respect to the Lipsitz Green and Lytle documents submitted for *in camera* inspection, Judge Shipp found that the documents did not need to be disclosed under the December 23, 2009 and March 2, 2010 Orders. Because the subpoenas were issued by the Western District of New York, Judge Shipp did not order that they be quashed. However, he did clarify that nothing in his previous Orders required that the documents be produced, and encouraged Plaintiffs to provide a copy of the Order to the Western District of New York as the "Court's recommendation and clarification and/or modification of its previous rulings." (Nov. 19

7

Order 12-15). He also encouraged the Defendant to "consider voluntarily withdrawing its subpoena[s] based on this Court's findings and conclusions." Id.

On December 3, 2010, Defendants filed this appeal of Judge Shipp's order together with a motion for reconsideration of the same order (Doc. No. 388). Because this opinion will decide all issues presented in the motion for reconsideration, that motion is denied as moot.

## II.  DISCUSSION

A Magistrate Judge's decision is to be overturned only to the extent that the ruling is "clearly erroneous or contrary to law." L.Civ.R.72.1(c)(1)(A). The burden of showing that a ruling is "clearly erroneous or contrary to law rests with the party filing the appeal." Marks v. Struble, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J.1990) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). Moreover, "[a] ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc. 106 F.Supp.2d 761, 764 (D.N.J. 2000).

Where an appeal seeks review of a matter within the purview of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the "abuse of discretion standard" must be applied. Kounelis v. Sherrer, 529 F.Supp.2d 503, 518 (D.N.J. 2008) "[w]here a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion."; see also Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000) (discovery orders reviewed for abuse of discretion). An abuse of discretion occurs "when the judicial action is arbitrary, fanciful or unreasonable, which is

another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 115 (3d Cir. 1976).

There is "particularly broad deference given to a magistrate judge's discovery rulings." Farmers & Merchants Nat. Bank v. San Clemente Financial Group Securities, Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). Federal Rule of Civil Procedure 26(b)(2)(C) grants the Court considerable authority to limit a party's pursuit of otherwise discoverable information where the burden of a discovery request is likely to outweigh the benefits. The Court is directed to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." See also Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999) ("Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed…The Federal Rules of Civil Procedure expressly allow a district court to use its discretion and deny discovery requests if the material sought is 'unreasonably cumulative.') (internal citations omitted).

For the reasons described in detail below, this Court finds Judge Shipp's order to be, with one exception, a reasonable exercise of his considerable discretion in managing the scope of permissible discovery. This Court will modify the Order slightly due to unique issues raised by the deposition of Plaintiff King.

### A.  The Kostyn and Steiner Subpoenas

Defendant submits that Judge Shipp abused his discretion in two ways. First, Defendant that claims that Judge Shipp's opinion "failed to apply the proper standard of proof for quashing a subpoena based on undue burden." (Def. Br. 18). In particular, Defendant claims that Judge Shipp failed to require Plaintiffs to submit evidence of the extent to which compliance with Defendant's subpoenas would constitute a burden, and instead relied entirely on "the Magistrate Judge's perception that lawyers have better things to do with their time than respond to subpoenas." (Def. Br. 20).

On a motion to quash a subpoena, "[t]he moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive." Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004); See also DIRECTV, Inc. v. Richards, Civ. No. 03-5606 (GEB), 2005 WL 1514187, *2 (D.N.J. June 27, 2005) ("A subpoena causes an undue burden if the request 'is unreasonable or oppressive.'"); Redland Soccer Club, Inc. v. Department of Army of U.S., 55 F.3d 827, 856 (3d Cir. 1995) ("the party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive").

In determining whether a subpoena is "unreasonable and oppressive" the court should consider "(1) the party's need for the production; (2) the nature and importance of the litigation; (3) relevance; (4) the breadth of the request for the production; (5) the time period covered by the

request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed entity. OMS Investments, Inc. v. Lebanon Seaboard Corp., No. 08-2681 (AET), 2008 WL 4952445, *3 (D.N.J. Nov. 18, 2008) quoting 9 JAMES WM. MOORE, ET AL., Moore's Federal Practice ¶ 45.32 (3d ed.2006); see also In re Auto. Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 495 (E.D. Pa. 2005) (same); Wiwa, 392 F. 3d at 818 (same). Bare allegations of burden will not suffice where the information requested is "entirely relevant to" the party's claims and the subpoena is "appropriately limited." DIRECTV, at *3. However no authority cited by Defendant suggests that a court must require documentary evidence of the specific cost or burden of production where a subpoena is facially overbroad or the information sought is irrelevant, privileged, or more readily obtainable from other sources.

Second, Defendant claims that Judge Shipp's opinion "improperly weighed the relevant factors for quashing a subpoena based on undue burden…" (Def. Br. 21). Specifically, Defendant charges that Judge Shipp "ignored" both "Ingersoll Rand's legitimate need" for deposition testimony and "the ample evidence showing Messrs. Kostyn and Steiner possess relevant and discoverable information and may, by their testimony, point Ingersoll Rand to other relevant evidence." (Def. Br. 22-23). Defendant further claims that it "cannot secure from any other source the information sought by the subpoenas." (Def. Br. 23).

The Court evaluates Judge Shipp's modification of the scope of documentary evidence sought by Defendant's subpoenas and his quashing of the depositions separately. With respect to the documentary evidence, the November 19, 2010 order appropriately evaluated the breadth of the information sought by the Kostyn and Steiner subpoenas given the scope of the Court's prior rulings and the relevance of the information requested. In ordering that information "not explicitly communicated to" the plaintiffs or which "discusses the SIP and/or 2004 Plan

11

generally and does not otherwise relate to Plaintiffs' Decision to accept same" is "not discoverable," (Nov. 19 Order 9) Judge Shipp appropriately balanced Defendant's need for relevant information to defend itself from charges of fraudulent inducement with Plaintiff's legitimate claims of privilege and the inherent inconvenience of third-party production. Contrary to Defendant's assertions, Judge Shipp did not previously rule all Plaintiff communications with counsel were relevant or discoverable, merely the documents that bear on Plaintiffs' decision to accept the 2004 Plan. See March 2 Order 2. To the extent that Kostyn and Steiner possess documents which were not communicated with Plaintiffs and/or do not bear on Plaintiffs' decision to accept the 2004 Plan, those documents are not directly relevant to Defendant's defense to charges of fraudulent inducement. Indeed, the remote possibility that other privileged documents might be of some peripheral use to Defendant does not merit vitiating Plaintiffs' privilege or imposing any additional burden on a non-party.

With respect to the depositions of Messrs. Steiner and Kostyn, the November 19, 2010 Order clearly evaluates the extent to which additional deposition testimony might provide information relevant to Defendant's defense. Judge Shipp considered and rejected Defendant's claim that Plaintiffs have collectively misrepresented their recollections and/or the facts concerning their solicitation of legal advice from counsel. (Nov. 12 Order 10). The Order weighs the extent to which all of the information that Defendant seeks is available from other sources, be they depositions of the Plaintiffs, documents already produced in discovery by Plaintiffs, or additional responsive documents produced by Counsel.

While this Court is similarly unconvinced that Plaintiffs' inability to recall the precise language of conversations that took place many years ago suggests "collective amnesia" or some form of coordinated deception, one issue bears specific attention. This Court is deeply troubled

by the deposition testimony of Plaintiff King, who claimed not to know attorneys Steiner or Kostyn and could not even confirm that he had met or consulted with them after being confronted with documentary evidence.[3] Indeed, King even denied knowledge of his own email address, raising the specter of a possible challenge to the authenticity of the communications. Given the potential dispute about whether Steiner or Kostyn ever consulted with King, this Court finds that Judge Shipp erred by foreclosing all deposition testimony from the attorneys and will permit limited depositions of Steiner and Kostyn for the purpose of verifying the authenticity of the documentary evidence and determine what, if any, legal advice they recall giving to Mr. King. Given the limited scope of relevant information likely to be discovered by these depositions and the need to minimize the burden on the third-parties, the depositions will take place by telephone and will be strictly limited to one hour each.[4]

## B. The Lipsitz Green and Phillip Lytle Subpoenas

Defendant next argues that Judge Shipp improperly "opined" over subpoenas issued by the Western District of New York, by issuing an "advisory opinion beyond the proper scope of the Court" and thereby "prejudice[d] Ingersoll Rand's ability to get a fair hearing on the merits

---

[3] Mr. King was shown an email from Scott Steiner that made specific reference to him by name in the body. The email was addressed to kingsix@adelphia.net, which Mr. King claimed not to recognize at all, even after being forced to admit that he had used kingsix@verizon and wesixking@yahoo. Even after being shown multiple email messages sent between Mr. Steiner and himself, Mr. King still denied having spoken to Mr. Steiner or knowing who he is.

[4] This Court notes that in contrast to other attorneys subpoenaed by Defendant, neither Kostyn nor Steiner has made any representation that he does not possess relevant knowledge about the legal advice that he communicated to Plaintiffs. Defendant should not take this Court's decision as broad endorsement of its strategy of deposing attorneys who profess no knowledge or recollection. Nor does this Court disagree with the decisions by other courts to quash Defendant's other deposition subpoenas, given the low probability that relevant evidence will be discovered and the ready availability of Plaintiffs' own depositions and documentary evidence as sources of information. See In re Subpoena to Goldberg, 693 F.Supp.2d 81, 88 (D.D.C. 2010) (rejecting third party deposition where a party's "own writings" provided a "more convenient, less burdensome or less expensive" source of the desired information.

of those motions." (Def. Br. 28). Defendant also questions the conclusions of the November 12, 2010 order with respect to the Lipsitz Green and Phillip Lytle subpoenas, because it "too narrowly construes both the concept of relevance and the Rulings already entered." Id.

As an initial matter, this Court notes that Defendant has made extensive use of Judge Shipp's discovery orders outside the District of New Jersey. Defendant attached a copy of the December 23, 2009 Order to each subpoena, no doubt hoping that Judge Shipp's ruling would discourage the recipients or other district courts from objecting to the subpoenas as overbroad and oppressive. Indeed, Defendant relies heavily on Judge Shipp's order in its opposition to Plaintiffs' motion to quash filed in the Southern District of Texas (Defendant's Brief in Opposition to Plaintiffs' Motion to Quash and/or Modify the Subpoena Served on Non-Party Mark S. Miller, Misc. Case No. 4:10-mc-00414 (S.D.T.X. Oct. 20, 2010), Doc. No. 2) ("Def. TX. Br.") and a virtually identical motion filed in the Western District of New York (Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion to Quash Certain Non-Party Subpoenas and in Support of Defendant's Cross-Motion to Compel the Production of Documents from Zdarsky, Sawicki & Agostinelli LLP, Misc. Case No. 10-MC-59 (W.D.N.Y. November 15, 2010) Doc No. 8-1) ("Def. NY Br.").

In its New York Brief, Defendant claims that Judge Shipp found discovery into entire "subject areas" to be "'essential' to defendant's fraud defenses." (Def NY Br. 1). It further claims that its subpoenas "conform fully to the New Jersey Court's rulings" and "seek only information the New Jersey Court found 'essential' to defendant's defense of plaintiffs' fraud claims." Id. Defendant was quick to point to Judge Shipp's expertise concerning this dispute, claiming that "[p]laintiffs hope the non-New Jersey courts' unfamiliarity with the parties' dispute will allow them to evade the New Jersey Court's rulings." Id.

But Defendant did not merely point to Judge Shipp's Order as a model of sound judicial reasoning. It also argued that the Western District of New York was bound by that Order under the law of the case doctrine, writing that "the law of the case doctrine prevents this Court from overturning the New Jersey Court's rulings and allowing plaintiffs to continue concealing documents and deposition testimony 'essential' to Ingersoll Rand's defense of plaintiffs' 'fraud' claims." (Def. NY Br. 14). Far from seeking a decision "on the merits," Defendant asserted that "the Subpoenas conform fully with the New Jersey Court's waiver rulings" and argued that as a consequence "[t]he law of the case doctrine , therefore, precludes plaintiffs from collaterally attacking these rulings." Id. Indeed, Defendant urged the court to "defer to the New Jersey Court's imminent decision on whether defendant can depose all twelve nonparty attorneys." (Def. NY Br. 20). Defendant also requested that the New York court order a subpoena recipient to "produce [responsive] documents for in camera inspection by the New Jersey Court" (Def. NY Br. 20), a process that it now claims is "inappropriate" and "beyond the proper scope of the Court." (Def. Br. 28).

Judge Shipp's November 19, 2010 Order acts only to clarify the scope and effect of previous rulings by the Court. Inter-district coordination among judges in this fashion is neither improper nor outside the proper jurisdiction of the Court. Indeed as the Court of Appeals has noted, "[c]oordination among judges can only foster the just and efficient resolution of cases." In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 345 (3d Cir. 1998). Moreover, the Order properly reasons that deposition testimony by Lipsitz Green and Phillips Lytle attorneys would be unnecessary cumulative, burdensome, and unlikely to lead to the discovery of admissible evidence. To the extent that any discoverable evidence might be obtained, it would be more readily obtainable from other sources. The Order is not an advisory

15

opinion, as it concerns "a real and substantial controversy admitting of specific relief through a decree of a conclusive character" and is not "an opinion advising what the law would be on a hypothetical state of facts." In re Grand Jury Matter, 673 F.2d 688, 694 (3d Cir. 1982). And having taken the position that Judge Shipp's December 23, 2009 Order is binding on other tribunals, Defendant is hardly in a position to complain about Judge Shipp's clarification of said order as so to prevent its use as a blank check for vexatious discovery throughout the United States.

This Court has also reviewed the *in camera* submissions evaluated by Judge Shipp and concurs with Judge Shipp's finding that they are not relevant to defendant's defense and need not be produced. The Lipsitz Green document is a one page billing record containing no details about any matters discussed with Plaintiffs. The Philips Lytle documents similarly provide no meaningful description of any legal advice provided to Plaintiffs. Neither set of submissions is relevant to Defendant's defenses and neither is subject to production under Judge Shipp's December 23, 2009 and March 2, 2010 Orders.

### III.  CONCLUSION

For the foregoing reasons, Magistrate Judge Shipp's November 19, 2010 order is AFFIRMED, except that it is REVERSED with respect to the depositions of Scott Steiner and Kevin Kostyn, which will be allowed to take place by telephone and limited to one hour.

The Court will enter an order implementing this opinion.

s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: January 25, 2011